S10A2005. THE STATE v. MAMEDOV.

(708 SE2d 279)

HUNSTEIN, Chief Justice.

The State appeals the grant of a writ of habeas corpus to appellee Anvar Mamedov, who was indicted on one count of kidnapping and pled guilty in August 2008 to the charge of false imprisonment.[1] A refugee from Uzbekistan who had been living in the United States for two years as a lawful permanent resident, Mamedov was sentenced as a first offender to three years of probation and community service. More than a year after the entry of his guilty plea, Mamedov was detained by the United States Immigration and Customs Enforcement agency and scheduled for deportation, on the ground that his conviction for false imprisonment rendered him an "aggravated felon" under federal immigration law and therefore made him eligible for deportation. See 8 USC § 1227 (a) (2) (A) (iii) ("[a]ny alien who is convicted of an aggravated felony at any time after admission

---

[1] The State was a proper respondent with respect to Mamedov's habeas petition, because at the time he filed his petition he was, as explained infra, being detained under federal authority. See *Smith v. State*, 234 Ga. 390 (216 SE2d 111) (1975) (habeas petition properly filed against State when petitioner in federal custody). Though Mamedov's habeas petition also named United States Customs and Immigration Enforcement and the U. S. Attorney General as respondents, these parties did not pursue an appeal.

is deportable").[2] Mamedov thereupon filed a petition for writ of habeas corpus seeking to vacate his plea, which was granted in June 2010 based on the habeas court's finding that Mamedov's plea counsel had rendered ineffective assistance by (1) failing to inform Mamedov that his guilty plea could subject him to deportation and (2) simultaneously representing both Mamedov and his co-defendant in the kidnapping case without informing Mamedov of the potential for a conflict of interest and the ramifications thereof. Having reviewed the record, we now affirm the grant of the writ of habeas corpus.

The basis for the kidnapping charges was as follows. In October 2007, Mamedov was driving a car, with his friend Mohammed Haji-Essa riding in the passenger seat. They came upon a young woman, in whom Haji-Essa had a romantic interest, and pulled up to her. Haji-Essa got out and physically forced the victim into the car, telling her that he loved her; the men drove around with her for a few minutes; and they released her near the place they had picked her up. Several bystanders witnessed the incident, including a newspaper photographer who captured the episode in a series of photographs.

When questioned by police, Mamedov stated that he and Haji-Essa had gotten in the car intending to go to the store. He stated further that as they were driving,

> [w]e saw the girl [Haji-Essa] liked. . . . [Haji-Essa] told her to get in the car and she did. She sat in the back seat behind the driver. I was driving and [Haji-Essa] was in the back seat with her. I drove around two or three minutes while they talked. I brought her back to Jolly Ave.

According to the prosecutor, the victim told police that "in her country, it is customary for a man . . . to . . . 'kidnap' the woman that he loves . . . and then the woman stays with him." In the prosecutor's words, the victim explained that "this is different from the American definition of 'kidnapping,' " and that "she was not harmed in any way."

In the aftermath of the incident, Haji-Essa's family retained counsel to represent both men. Aside from an initial brief meeting at

---

[2] Federal immigration law defines "aggravated felony" as, inter alia, "a crime of violence . . . for which the term of imprisonment (is) at least one year." 8 USC § 1101 (a) (43) (F). A "crime of violence" is any offense involving "the use, attempted use, or threatened use of physical force against the person or property of another." 18 USC § 16 (a). Under Georgia law, false imprisonment is punishable for "not less than one nor more than ten years." OCGA § 16-5-41 (b).

the jail shortly after his arrest, Mamedov never met with counsel outside the presence of Haji-Essa or Haji-Essa's family. Haji-Essa and his family paid the entirety of counsel's fees throughout the representation. Counsel never explored with Mamedov the possibility of mounting any defense to the kidnapping charge. Indeed, as counsel testified at the habeas hearing, he believed Mamedov had no defense. Counsel never raised with Mamedov the issue of any potential conflict of interest inhering in his dual representation of both men or explained to Mamedov that he could elect to retain his own attorney.

In addition, counsel never advised Mamedov that his guilty plea could make him eligible for deportation. Though there is some dispute about whether Mamedov had consulted with separate immigration counsel and some indication that Mamedov was aware that a criminal conviction would prevent him from becoming a U. S. citizen, the undisputed evidence establishes that Mamedov was never advised about any risk of deportation. Mamedov testified that he did not know he would be subject to deportation as the result of entering his guilty plea and that he would not have pled guilty had he known deportation was a possible consequence.[3]

To establish ineffective assistance based on a conflict of interest on the part of trial counsel, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." (Footnote omitted.) *Cuyler v. Sullivan*, 446 U. S. 335, 348 (IV) (B) (100 SC 1708, 64 LE2d 333) (1980). Accord *Meyers v. State*, 265 Ga. 149, 150 (2) (454 SE2d 490) (1995). " 'A conflict of interest is involved if there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by . . . the lawyer's duties to another current client, a former client, or a third person.' [Cit.]" *Burns v. State*, 281 Ga. 338, 339, n. 3 (638 SE2d 299) (2006). Further, for ineffectiveness claims premised on a conflict of interest, a petitioner need not prove prejudice as is typically required; rather, prejudice will be presumed where the petitioner can establish an actual conflict of interest that adversely affected the adequacy of counsel's representation. See *Whatley v. Terry*, 284 Ga. 555 (IV) (668 SE2d 651) (2008).

---

[3] Mamedov testified via affidavit because federal officials failed to authorize his release to enable his appearance at the habeas hearing, despite the habeas court's issuance of a writ of habeas corpus ad testificandum ordering his production at the hearing. See *Rickett v. State*, 276 Ga. 609 (2) (581 SE2d 32) (2003) (habeas statute does not require petitioner's presence at hearing, as habeas court authorized to receive evidence by affidavits, depositions, oral testimony, or otherwise).

"(O)nce an actual conflict is proven, a petitioner need only demonstrate an adverse impact on his counsel's perfor- mance, or, in this case, on his decision to enter a guilty plea. . . . (T)he proper focus is solely on whether [counsel's] conflict affected his actions and [petitioner's] decision[s]." [Cit.]

*Tarwater v. State*, 259 Ga. 516, 518 (383 SE2d 883) (1989). Accord *Fogarty v. State*, 270 Ga. 609, 611 (513 SE2d 493) (1999) (petitioner need not show that result of proceeding would have been different without conflict of interest but rather only that conflict had some adverse effect on counsel's performance).

Applying these principles to the facts herein, there is no error in the habeas court's finding of an actual conflict of interest that adversely affected counsel's performance. First, the fact that Haji-Essa alone was paying counsel's fees created a strong incentive for counsel to prioritize Haji-Essa's interests in the matter over Mame-dov's. In addition, even though, as the State argues, the men pursued a unified defense in that their accounts of the incident were consistent, the record reflects that Mamedov was the less culpable of the two in the crime, as it appears that his participation was limited to his role as a passive witness who happened to be driving when Haji-Essa initiated the brief, apparently unpremeditated interaction with the victim.

In a case of joint representation of conflicting interests, the evil is in what the advocate is compelled to *refrain* from doing. [Cit.] Thus, a failure on the part of counsel to pursue an alternative defense theory that is more favorable to one defendant but which would have prejudiced a co-defendant by shifting blame to him may well give rise to an actual conflict of interest. [Cit.]

(Emphasis in original.) *Meyers*, supra, 265 Ga. at 150 (2). As counsel's testimony reveals, he not only failed to pursue an alterna- tive defense theory on behalf of Mamedov, he failed even to recognize the possibility that one might exist. Had counsel been retained and paid by Mamedov alone, such a theory would at the very least have been considered. See *Woods v. State*, 275 Ga. 844, 845 (2) (573 SE2d 394) (2002) (to prevail on claim of ineffective assistance due to conflict of interest, defendant must show that " 'his lawyer would have done something differently if there was no conflict' "). Had such a theory been pursued on Mamedov's behalf, it is impossible to predict what the outcome of the proceedings would have been for

him.[4] Because he is not required to establish prejudice to prevail on this claim, see *Tarwater*, supra, 259 Ga. at 518, we need not speculate thereon.

Because the habeas court properly granted Mamedov's petition for writ of habeas corpus based on counsel's conflict of interest, we need not reach the merits of the habeas court's finding of ineffective assistance under *Padilla v. Kentucky*, ___ U. S. ___ (130 SC 1473, 176 LE2d 284) (2010) (attorney's failure to inform client regarding deportation risks associated with guilty plea may give rise to viable ineffectiveness claim).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 18, 2011.

*Gwendolyn Keyes Fleming, District Attorney, Deborah D. Wellborn, Assistant District Attorney*, for appellant.
*Michael R. Schumacher*, for appellee.

---

[4] It is likewise impossible to ascertain the extent to which counsel's conflict may have affected his diligence in determining the immigration consequences of Mamedov's guilty plea.