In the Supreme Court of Georgia

Decided:   Novemberr 23, 2015

S15A1073. TOLBERT v. THE STATE.

BLACKWELL, Justice.

Terry Gene Tolbert was tried by a Richmond County jury and convicted of murder and the unlawful possession of a firearm during the commission of a felony, both in connection with the fatal shooting of Shelley Griffin. Tolbert appeals, contending only that he was denied the effective assistance of counsel. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] Griffin was killed on January 26, 1996. Along with co-defendants Dewey Sims and Leroy Sims, Tolbert was indicted on March 19, 1996, and all three were charged with malice murder, felony murder, and the unlawful possession of a firearm during the commission of a felony. In addition, Dewey alone was charged with the unlawful possession of a firearm by a convicted felon. All three men were tried together, beginning on November 19, 1996. The jury returned its verdict two days later, finding both Tolbert and Dewey guilty of all the crimes with which they were charged. Leroy was found guilty of malice murder and felony murder, and he was acquitted of unlawful possession of a firearm during the commission of a felony. All three men were sentenced to imprisonment for life for malice murder. In addition, Tolbert and Dewey were sentenced to consecutive terms of imprisonment for five years for unlawful possession of a firearm during the commission of a felony, and Dewey alone was sentenced to an additional consecutive term of imprisonment for five years for unlawful possession of a firearm by a convicted felon. The verdicts as to felony murder were vacated by operation of law. Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Tolbert filed a petition for writ of habeas corpus, and the habeas court granted him an out-of-time appeal on April 9, 2008. Following the habeas court's instructions, Tolbert

1. Viewed in the light most favorable to the verdict, the evidence shows that Leroy Sims and Dewey Sims are brothers, and Tolbert is their nephew. On January 26, 1996, following the execution of a search warrant at the residence at which Griffin lived, Griffin confronted Leroy, threatened him, and said that both Leroy and Dewey were "snitches." Griffin retrieved a pistol and then returned to complain more about the search. At that point, Dewey and Tolbert arrived at the scene, both carrying guns. Dewey and Tolbert joined Leroy, and all three quickly approached Griffin. Griffin gave his gun to a friend and urged Leroy, Dewey, and Tolbert not to use guns, but instead to fight "like a man." According to an eyewitness, Tolbert told Griffin: "Don't move, don't move, or I'm going to bust you." At some later point, Tolbert said: "[O]kay, you know.

filed a timely notice of appeal and sought appointment of counsel on April 22, 2008. But no appellate lawyer was appointed until June 9, 2008. The appellate lawyer filed an untimely motion for new trial on August 27, 2008, and she amended it on October 12, 2011. The trial court denied that motion on February 15, 2012, vacated and set aside its order on February 23, 2012, and entered a second order denying the motion for new trial on August 23, 2012. Tolbert then filed a second notice of appeal on September 10, 2012, but in Case No. S13A0759, we struck the appeal and remanded the case to the trial court on February 18, 2013 because the trial court had lacked jurisdiction to rule upon the motion for new trial, Tolbert wished to pursue a claim of ineffective assistance of trial counsel, and his failure to raise that issue at the earliest possible time could not properly be held against him. Tolbert timely filed a second motion for new trial on March 19, 2013, and the trial court denied this motion on December 9, 2014. Tolbert timely filed a third notice of appeal on January 7, 2015. The case was docketed in this Court for the April 2015 term and orally argued on June 2, 2015.

We ain't going to do nothing like that." Leroy then told Dewey to "do it" — or something along those lines — and Dewey then pointed a gun at Griffin and shot him in the head, killing him. Dewey, Leroy, and Tolbert then fled together. Although Tolbert does not dispute the legal sufficiency of the evidence, we have reviewed the entire record, and we conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Tolbert is guilty of the crimes of which he was convicted.[2] Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Tolbert contends that he was denied the effective assistance of counsel at his trial because his lawyer also represented Leroy, and the concurrent representation of these two co-defendants, Tolbert says, created a conflict of interest for the lawyer. This conflict of interest, Tolbert argues, affected the way in which the lawyer represented him at trial in two distinct ways. First, he says, the lawyer did not seek out a favorable plea bargain for Tolbert, presumably because such a plea bargain might have involved Tolbert testifying against

---

[2] We previously have considered the legal sufficiency of the evidence as to Dewey and Leroy, and we found the evidence sufficient in both cases. See Sims v. State, 281 Ga. 541 (640 SE2d 260) (2007) (Leroy); Sims v. State, 268 Ga. 381 (489 SE2d 809) (1997) (Dewey).

3

Leroy. Second, Tolbert contends, his lawyer did not argue at trial that he was less culpable than Leroy, an argument that would have been supported by the evidence, he claims, but one that posed a risk of highlighting the greater culpability of Leroy. We will address these arguments in turn, but we first recall the applicable principles of law.

(a) This Court has recognized the potential for serious conflicts of interest when one lawyer represents co-defendants in a criminal proceeding. See In re Formal Advisory Opinion 10-1, 293 Ga. 397, 400 (2) (744 SE2d 798) (2013). Even so, the concurrent representation of co-defendants is not a "per se [violation] of constitutional guarantees of effective assistance of counsel." Burger v. Kemp, 483 U. S. 776, 783 (III) (107 SCt 3114, 97 LE2d 638) (1987) (citation and punctuation omitted). See also Ellis v. State, 272 Ga. 763, 765 (2) (534 SE2d 414) (2000), overruled on other grounds, Alexander v. State, 297 Ga. 59, 62, 64 (772 SE2d 655) (2015). To prevail on a claim that a conflict of interest worked a denial of the effective assistance of counsel, a defendant like Tolbert — one who failed to object to the conflict at trial[3] — must show that "an

[3] It is undisputed that Tolbert did not object at trial, but we note that he also did not affirmatively waive any conflict of interest, even though the prosecutor asked for an affirmative waiver. At that time, the lawyer for Tolbert and Leroy said that he had discussed

actual conflict of interest adversely affected his lawyer's performance." <u>Cuyler v. Sullivan</u>, 446 U. S. 335, 348 (IV) (B) (100 SCt 1708, 64 LE2d 333) (1980) (footnote omitted). See also <u>State v. Mamedov</u>, 288 Ga. 858, 860 (708 SE2d 879) (2011). As we consider whether Tolbert has made such a showing, we do not, however, inquire "into actual conflict as something separate and apart from adverse effect." <u>Mickens v. Taylor</u>, 535 U. S. 162, 172, n. 5 (II) (122 SCt 1237, 152 LE2d 291) (2002). Rather, as the United States Supreme Court has explained, an "actual conflict of interest" means "a conflict *that affected*

---

the possibility of a conflict with them, that no conflict was anticipated, and that he was sure that they would be willing to waive any possible conflict. The trial court then asked Tolbert and Leroy if they were satisfied with their lawyer, the lawyer told them to "[s]tand up and say 'yes, sir,'" and they did so. Although the court cautioned the lawyer not to put words in the mouths of his clients, no further questions were asked, and Tolbert said nothing more about any conflict.

> In order to waive a right as fundamental as effective counsel, the trial court must, on the record, determine that the waiver is knowing, intelligent and voluntary. To meet this test, the trial court must be satisfied that the defendant is aware of the possibility of conflicts and the dangerous consequences which may result. [Federal appellate courts] point out the importance of personal questioning, on the record, by the trial court.

<u>Redd v. State</u>, 264 Ga. 399, 401 (444 SE2d 776) (1994) (citations and punctuation omitted). See also <u>Golden v. State</u>, 250 Ga. App. 288, 289 (2) (551 SE2d 398) (2001). In this case, Tolbert was asked a single question that was not specifically and expressly directed to potential conflicts of interest, and he merely answered that he was satisfied with his lawyer after being told to do so. His response to this inquiry does not demonstrate that he understood the possible conflict in his representation by the same lawyer who represented Leroy, as well as the potential perils of such conflict. See <u>Redd</u>, 264 Ga. at 401. Cf. <u>Taylor v. State</u>, 320 Ga. App. 596, 603-604 (2) (740 SE2d 327) (2013); <u>Golden</u>, 250 Ga. App. at 289-291 (2). Accordingly, there is no basis in the record for finding a waiver of any conflict of interest.

5

*counsel's performance* — as opposed to a mere theoretical division of loyalties." Id. at 171 (II) (emphasis in original). See also <u>Sullivan</u>, 446 U. S. at 350 (IV) (C) ("the possibility of conflict is insufficient to impugn a criminal conviction"); <u>Lamb v. State</u>, 267 Ga. 41, 42 (1) (472 SE2d 683) (1996) ("[T]he conflict must be palpable and have a substantial basis in fact. A theoretical or speculative conflict will not impugn a conviction which is supported by competent evidence.") (citation omitted). Put another way, the test of a claim that a conflict of interest worked a denial of the effective assistance of counsel is "whether the representation deprived either defendant of the undivided loyalty of counsel, i.e., did counsel slight one defendant to favor the other?" <u>Lamb</u>, 267 Ga. at 42 (1) (citation omitted).[4]

Tolbert first asserted a conflict of interest of the part of his trial lawyer in a motion for new trial, and on that motion, he had the burden of proving that his

---

[4] Tolbert was not required to show prejudice, that is, a reasonable probability that the outcome of the proceedings would have been other than it was if only the lawyer had not labored under a conflict of interest. See <u>State v. Abernathy</u>, 289 Ga. 603, 604-605 (1) (715 SE2d 48) (2011) ("the critical question is whether the conflict significantly affected the *representation*, not whether it affected the outcome of the underlying *proceedings*") (emphasis in original); <u>Mamedov</u>, 288 Ga. at 860. Instead, prejudice is presumed "if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." <u>Burger</u>, 483 U. S. at 783 (III). See also <u>Sullivan</u>, 446 U. S. at 349-350 (IV) (B); <u>Mamedov</u>, 288 Ga. at 860.

6

trial lawyer had an actual conflict of interest, that is, one that significantly and adversely affected the adequacy of the representation. See State v. Abernathy, 289 Ga. 603, 604 (1) (715 SE2d 48) (2011); Lamb, 267 Ga. at 42 (1). In an attempt to carry his burden, Tolbert relied principally on the record of the trial, his own testimony at the hearing on his motion for new trial, and the testimony of Leroy at that same hearing. Notably, Tolbert did not elicit any testimony in support of his motion from his trial lawyer, inasmuch as the trial lawyer had passed away by the time that the motion for new trial was heard. The unavailability of his trial lawyer, however, did not relieve Tolbert of his burden. See Hicks v. State, 295 Ga. 268, 276, n. 7 (3) (b) (759 SE2d 509) (2014); Schofield v. Meders, 280 Ga. 865, 867, n. 2 (1) (632 SE2d 369) (2006).

In its order denying the motion for new trial, the trial court applied the proper standard and concluded that Tolbert had failed to carry his burden of proving that the trial lawyer was "laboring under a conflict of interest that adversely affected his representation." In support of this conclusion, the trial court made the following written findings of fact:

> This Court finds that [the lawyer for Tolbert and Leroy] vigorously represented the interests of both clients during the trial. Neither client was alleged to be the shooter. Vigorously defending one

7

client did not have an adverse impact on the other. . . . There is no evidence of anything that trial counsel could have done in defense of [Tolbert] that was not pursued out of a divided loyalty to [Leroy]. Specifically, this Court finds that [the lawyer] subjected the State's case against [Tolbert] to a meaningful adversarial testing in such a manner that the finder of fact made [an] informed and accurate decision as to [Tolbert's] culpability.

As we review the decision of the trial court, we owe no deference to its application of the law to the facts of this case. See Moon v. State, 288 Ga. 508, 514 (8) (705 SE2d 649) (2011). See also Abernathy, 289 Ga. at 604 (1); Davis v. Turpin, 273 Ga. 244, 248 (3) (c) (539 SE2d 129) (2000). We owe substantial deference, however, to the way in which the trial court assessed the credibility of witnesses and found the relevant facts. See Moon, 288 Ga. at 514 (8). To that end, we must accept the factual findings of the trial court unless they are clearly erroneous, see id., and we must view the evidentiary record in the light most favorable to the findings and judgment of the trial court. Cf. Brown v. State, 293 Ga. 787, 803 (3) (b) (2) (750 SE2d 148) (2013) (in the context of appellate review of grant of motion to suppress, noting that deference to the fact-finding prerogative of the trial court requires an appellate court to view the evidence in the light most favorable to the findings and decision of the trial court). With these principles in mind, we turn now to the ways in which Tolbert claims that

his representation was actually and substantially affected by a conflict of interest.

(b) To begin, we consider the contention that the trial lawyer for Tolbert and Leroy had a serious conflict of interest. As we have acknowledged before, in most every case in which one lawyer represents co-defendants in a criminal proceeding, there is, at the least, a potential conflict of interest, see In re Formal Advisory Opinion 10-1, 293 Ga. at 400 (2), and we accept that there was some potential for a conflict of interest in this case. See Burns v. State, 274 Ga. App. 687, 689-690 (1) (618 SE2d 600) (2005) ("the potential for an actual conflict of interest is greater in those cases in which multiple co-defendants are represented by a single attorney than when co-defendants are represented by different attorneys"), aff'd 281 Ga. 338 (638 SE2d 299) (2006). Tolbert asserts, however, that the danger posed here by the potential conflict of interest was compounded by the method by which the lawyer was paid and the ways in which he communicated with his concurrent clients.

At the hearing on the motion for new trial, Leroy testified that he paid the fee for the trial lawyer to represent both Tolbert and Leroy. We have recognized that, "in some circumstances[,] counsel's fee arrangement may create a conflict

of interest with the client and the conflict can affect the adequacy of counsel's representation." Blackshear v. State, 274 Ga. 842, 844 (2) (560 SE2d 688) (2002) (citations omitted). See also Wood v. Georgia, 450 U. S. 261, 268-269 (III) (101 SCt 1097, 67 LE2d 220) (1981) (noting "the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise"). If Leroy alone paid the lawyer, that certainly could have provided an incentive for the lawyer to prioritize the interests of Leroy over those of Tolbert. See Mamedov, 288 Ga. at 861.

To make matters worse, Tolbert says, the lawyer met with Leroy alone, but he never met with Tolbert outside the presence of Leroy. At the hearing on the motion for new trial, Leroy testified that he met with the lawyer on several occasions on which Tolbert was not present.[5] Tolbert himself testified that he never met with the lawyer outside the presence of Leroy. Again, we acknowledge that a lawyer meeting alone with one client, but not the other, in the context of a joint representation is worrisome. See id. at 859-860 (noting

---

[5] We note, however, that Leroy did not testify that he discussed the merits of the case or potential defenses with the lawyer on these occasions. According to Leroy, he met alone with the lawyer on several occasions when he took money to the office of the lawyer.

that, with one exception, lawyer never met with defendant outside the presence of the co-defendant or the family of the co-defendant).

The contentions about the manner in which the lawyer was paid and the way in which he communicated with his client depend, however, on the credibility of Leroy and Tolbert. The trial court did not expressly credit their testimony. There certainly were reasons to doubt their credibility,[6] and more important, the "[c]redibility of witnesses and the weight to be given their testimony is is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony." Tate v. State, 264 Ga. 53, 56 (3) (440 SE2d 646) (1994) (citation omitted). Our obligation to view the evidentiary record in the light most favorable to the findings and judgment of the trial court requires us to assume that the trial court in this case rejected the credibility of Tolbert and Leroy to the extent that their

---

[6] Tolbert, for instance, testified at the hearing on his motion for new trial that he did not understand at the time of trial that *he* was on trial. To the contrary, Tolbert said, he thought he was in court only to provide testimony for Dewey. If that were true, it would raise a host of potential issues other than a conflict of interest (about his competency to stand trial, for example), but Tolbert notably does not raise any such issues. Tolbert also testified at the hearing that he did not have a gun at the time of the murder and that he did not flee from the scene, but that testimony was contradicted by evidence presented at trial.

11

testimony is inconsistent with its decision. See Hughes v. State, 296 Ga. 744, 747 (1) (770 SE2d 636) (2015). And in any event, even if Leroy alone paid the lawyer, and even if the lawyer met alone with Leroy (but not with Tolbert), the question would remain whether the potential conflict of interest for the lawyer had a significant and adverse effect on the way in which he represented Tolbert. See United States v. Wells, 394 F3d 725, 734 (III) (9th Cir. 2005); Lipson v. United States, 233 F3d 942, 946 (II) (7th Cir. 2000); Abernathy, 289 Ga. at 604 (1); Blackshear, 274 Ga. at 844 (2). We turn, therefore, to that question.

(c) According to Tolbert, Leroy was offered a favorable plea bargain at trial, but Tolbert was offered none, and this circumstance, he contends, shows that his lawyer prioritized the interests of Leroy over his own. This contention, however, relies on the testimony of Leroy that Leroy was, in fact, offered a plea bargain. Again, the trial court was not required to credit that testimony.[7] Moreover, there is no evidence at all about what plea discussions the lawyer did or did not undertake on behalf of Tolbert — recall that the trial lawyer did not testify at the hearing on the motion for new trial. Cf. Ellis, 272 Ga. at 766 (2)

---

[7] At the time of the hearing on the motion for new trial, the prosecuting attorney recalled no plea offers.

12

(evidence showed that lawyer obtained plea offers for both clients, but did not pursue a better bargain for one client that would involve his testifying against the other client, notwithstanding that evidence also showed that the State might well have bargained for such testimony). Likewise, there is no evidence that the prosecuting attorney would have been inclined to offer a favorable plea bargain to Tolbert, even if the lawyer had proposed that Tolbert would be willing to testify against Leroy. Cf. Burger, 483 U. S. at 785 (III) ("The notion that the prosecutor would have been receptive to a plea bargain is completely unsupported in the record."). Notably, Tolbert has failed to show that he could or would have given testimony against Leroy that would have been of meaningful value to the State at trial. To the contrary, at the hearing on the motion for new trial, Tolbert gave testimony that was largely exculpatory of Leroy. Consequently, there simply is no evidence that Tolbert would have been offered a favorable plea bargain, if only his lawyer had explored the possibility of Tolbert testifying against Leroy. See Christopher v. State, 262 Ga. App. 257, 263 (3) (585 SE2d 107) (2003). See also Eisemann v. Herbert, 401 F3d 102, 109-110 (II) (3) (2nd Cir. 2005). In addition, Tolbert has failed to show that the evidence would not support separate arguments for Tolbert and Leroy in plea

13

negotiations, such that the lawyer could have negotiated pleas for Tolbert and Leroy alike without prejudicing either and without forcing the lawyer to choose one client over another. See People v. Tafoya, 833 P2d 841, 845 (III) (Colo. App. 1992). Even if we were to credit the testimony that Leroy gave below, the record is not developed sufficiently to permit us to assess whether the performance of the lawyer with respect to plea negotiations was adversely affected, much less significantly so, by his joint representation of Tolbert and Leroy. See State v. Smith, 748 S2d 1139, 1142 (La. 1999). For these reasons, Tolbert has failed to carry his burden to show that his lawyer did not seek a favorable plea bargain for Tolbert as the result of any conflict of interest.

(d) Finally, Tolbert contends that his lawyer could have argued at trial that Tolbert was less culpable than Leroy, but the lawyer did not, he says, because such an argument would only have focused the jury on the greater culpability of Leroy. In a case of joint representation of conflicting interests, the evil generally "is in what the advocate is compelled to refrain from doing. Thus, a failure on the part of counsel to pursue an alternative defense theory that is more favorable to one defendant but which would have prejudiced a co-defendant by shifting blame to him may well give rise to an actual conflict of interest."

14

Mamedov, 288 Ga. at 861 (citation omitted).[8] See also Abernathy, 289 Ga. at 605 ("[a] significant effect on the representation may be found, for example, where counsel is shown to have refrained from raising a potentially meritorious issue due to the conflict") (citation omitted); Meyers v. State, 265 Ga. 149, 150 (2) (454 SE2d 490) (1995). That said, a mere failure to emphasize the different culpability of each co-defendant does not always and necessarily demonstrate an actual conflict. See Burger, 483 U. S. at 784 (III); Kegler v. State, 16 SW3d 908, 913 (Tex. App. 2000). Accordingly, we now must consider whether the evidence adduced at trial would have, in fact, supported an argument that Tolbert was less culpable than Leroy,[9] and we must consider as well whether the

[8] In his brief on appeal, Tolbert relies most heavily on Mamedov, but that was a very different case in two important respects. First, in Mamedov, the lawyer whose performance was found to have been adversely and significantly affected by a conflict of interest actually testified in the habeas proceedings. See 288 Ga. at 861. Second, in Mamedov, the habeas court found an actual conflict of interest, see id., and we, therefore, were required on appeal by the State to view the evidentiary record in the light most favorable to that finding. Here, Tolbert was unable to elicit any testimony from his trial lawyer, so there is much about what the lawyer did and did not do that is unknown. And here, the trial court found no actual conflict of interest, and we are required, therefore, to view the evidence in the light most favorable to that determination.

[9] In addition to the evidence actually adduced at trial, Tolbert argues that his lawyer should have shown his lesser culpability by presenting additional evidence that Tolbert had a good relationship with Griffin and that Tolbert had a mental impairment as a result of a serious head injury. We need not, however, consider this additional evidence at length. As for the allegedly good relations between Tolbert and Griffin, the only evidence of such relations is the self-serving testimony that Tolbert himself gave at the hearing on his motion

15

record shows that the failure of counsel to make such an argument is likely attributable to a conflicting loyalty that the lawyer owed to Leroy.

No doubt, some evidence was presented to the jury that might arguably suggest that Leroy was more culpable than Tolbert. That evidence includes proof of prior difficulties between Leroy and Tolbert, as well as evidence that Griffin threatened Leroy (believing him to be a "snitch"), that Tolbert backed

---

for new trial. The only way that testimony properly could have been put before the jury was by Tolbert testifying at trial and subjecting himself to cross-examination. See Parker v. State, 276 Ga. 598 (2) (581 SE2d 7) (2003); Mathis v. State, 265 Ga. App. 541, 544 (2) (c) (594 SE2d 737) (2004). But Tolbert did not argue in the trial court in connection with his motion for new trial, and he does not argue in his appellate brief, that his lawyer should have called him as a witness at trial. Moreover, although the State presented evidence at trial that Leroy had prior difficulties with Griffin, there was no evidence of prior difficulties between Tolbert and Griffin. Accordingly, self-serving testimony at trial by Tolbert that he had a good relationship with Griffin would not have added much at all to the evidence presented at trial. Especially considering that the trial court (we must assume) found Tolbert not credible, we cannot say that the failure of the trial lawyer to present testimony from Tolbert about his good relations with Griffin — and thereby expose Tolbert to cross-examination before the jury — was likely attributable to any divided loyalties.

About the head injury, Tolbert offered medical records showing that he had sustained such an injury at the hearing on the motion for new trial, but those records do not demonstrate any lasting mental impairment that may have resulted from the injury. Leroy testified at the hearing that Tolbert "can't think really fully," but there is no indication that Leroy would have been available to testify for Tolbert at trial, even if they had been separately represented, and even if they had been tried separately. Other than that testimony by Leroy, there is simply no evidence of a mental impairment. Finally, there is no evidence that the trial lawyer knew or should have known at the time of trial about any mental impairment from the head injury. For all these reasons, Tolbert has not shown that the failure of his lawyer to present evidence of mental impairment resulting from a head injury was attributable in any way to a conflict of interest.

16

off his initial threat to Griffin, and that Leroy told Dewey to "do it," leading to Dewey shooting Griffin. At the same time, however, some evidence presented at trial suggests that Tolbert was the more culpable of the two. Among other things, the evidence shows that Tolbert arrived on the scene with the eventual shooter, that Tolbert (but not Leroy) was carrying a gun, and that Tolbert directly threatened Griffin in the course of the confrontation. It is not clear, therefore, that any attempt to distinguish between the culpability of Tolbert and Leroy would have been helpful to Tolbert. In the light of that uncertainty, even if Tolbert and Leroy had been represented by separate counsel at trial, there would have been strategic reasons for those separate counsel not to advance arguments about differences in culpability between the two co-defendants. Accordingly, in the absence of any other evidence about what led the trial lawyer to choose another course, we cannot conclude that his failure to argue that Tolbert was less culpable than Leroy is indicative of an actual conflict of interest.

Moreover, we cannot say that an argument that Tolbert was less culpable than Leroy would have been significantly stronger than the common defense that the lawyer actually advanced at trial for Tolbert and Leroy, and for that

reason as well, we cannot conclude that the failure to urge a defense based on comparative culpability likely was motivated by a conflict of interest. An alternative defense theory of differential culpability would have helped Tolbert only if it would have convinced the jury that Tolbert was so much less culpable that he — unlike Leroy — was not a party to the crime. See Ramirez v. Dretke, 396 F3d 646, 650 (II) (5th Cir. 2005). But notwithstanding any differences in his culpability and that of Leroy, the evidence that Tolbert was culpable enough to be a party to the crime was strong. The evidence shows, after all, that Tolbert arrived on the scene with a gun and accompanied by the eventual shooter, that Tolbert directly threatened Griffin, that Tolbert was linked by kinship to both Leroy and Dewey, that Tolbert fled the scene with Leroy and Dewey, and that Tolbert later went with Leroy and Dewey to the hospital in an attempt to confirm that Griffin was dead. See Teasley v. State, 288 Ga. 468, 469-470 (704 SE2d 800) (2011); Ashe v. State, 285 Ga. 359, 360-361 (1) (676 SE2d 194) (2009); Scott v. State, 280 Ga. 466, 467 (1) (629 SE2d 211) (2006).[10]

_____

[10] To the extent that the lawyer could have argued that Tolbert was less culpable because he withdrew from the criminal enterprise, we again fail to see evidence of withdrawal that would have supported a significantly stronger defense than the common defense that actually was urged at trial. Although there was evidence that, after threatening Griffin, Tolbert made a comment that appeared to back off that threat, the evidence also

Rather than differentiating between Leroy and Tolbert, their lawyer argued at trial that Dewey had acted in self-defense when he shot Griffin (which was consistent with Dewey's own defense), and that even if Dewey were not justified, neither Leroy nor Tolbert was a party to the crime. In support of these defenses, the trial lawyer argued that both Leroy and Tolbert were just "standing there" at the scene of the crime, that neither pointed a gun at Griffin, that Griffin was a violent drug dealer who threatened Leroy and ultimately forced Dewey to defend himself, and that both Leroy and Tolbert were attempting to defuse the tense confrontation. As the United States Supreme Court has recognized, "[i]n many cases[,] a common defense gives strength against a common attack." Burger, 483 U. S. at 784 (III). See also Holloway v. Arkansas, 435 U. S. 475, 482 (II) (98 SCt 1173, 55 LE2d 426) (1978) ("[I]ndeed, in some cases, certain advantages might accrue from joint representation. . . . Joint representation is a means of insuring against reciprocal recrimination.") (punctuation omitted). The

_____

showed that Tolbert nevertheless remained a participant in the confrontation, even after Dewey pointed a gun at Griffin. Moreover, the evidence shows that Tolbert fled with Leroy and Dewey after the shooting. The evidence of withdrawal was slight, and it would not have supported a defense of withdrawal significantly stronger than the actual defense advanced at trial. See Hassel v. State, 257 Ga. App. 228, 231 (3) (570 SE2d 685) (2002). Again, the failure of the trial lawyer to argue withdrawal is not, therefore, indicative of any conflict of interest.

defenses of Tolbert and Leroy were perfectly compatible, as they both were based on the theory that Dewey had acted in self-defense and that, even if the evidence of self-defense failed, Tolbert and Leroy were not parties to the crime of murder. See State v. Smith, 748 S2d 1139, 1144 (La. 1999); Kegler, 16 SW3d at 913. The unified defense strategy was to show that both Tolbert and Leroy were innocent; neither of them testified, much less did one point the finger at the other. See Lamb, 267 Ga. at 42 (1); Taylor v. State, 320 Ga. App. 596, 605 (2) (740 SE2d 327) (2013); Mitchell v. State, 312 Ga. App. 293, 298 (3) (718 SE2d 126) (2011). And there is no suggestion that urging this defense on behalf of Leroy somehow would have made the jury less likely to accept the same defense urged on behalf of Tolbert.

The contention that the failure of trial counsel to differentiate the culpability of Tolbert from that of Leroy is most probably explained by a conflict of interest is, at best, poorly supported. See State v. Newman, 928 P2d 1040, 1045 (Utah App. 1996). The trial court found "no evidence of anything that trial counsel could have done in defense of [Tolbert] that was not pursued out of a divided loyalty to codefendant Leroy Sims." Especially in the absence of any testimony from the trial lawyer, we cannot say that this finding is clearly

20

erroneous. The record before us does not demonstrate that the choice of defense in this case was the result of a conflict of interest, as opposed to a reasonable strategic decision, an unreasonable strategic decision, or even inattention and neglect.[11] The trial court was authorized to conclude that Tolbert failed to demonstrate that his lawyer's theoretical division of loyalties ripened into an actual conflict of interest that significantly and adversely affected the adequacy of the lawyer's representation of him at trial.

Judgment affirmed. All the Justices concur.

---

[11] If the choice of defense reflected a reasonable strategic decision, it would be virtually unassailable. If it reflected an unreasonable strategic decision or inattention and neglect, it might form the basis for a claim of ineffective assistance under Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). But a Strickland claim is different from a Sullivan claim — the former requires proof of prejudice, the latter does not — and Tolbert has not advanced a Strickland claim in this case.