**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 22, 2022**

# In the Court of Appeals of Georgia

A22A0738. WHITE v. THE STATE.

DILLARD, Presiding Judge.

Following a trial by jury, Curtis Jerome White was convicted of child molestation and statutory rape. White now appeals those convictions, arguing the trial court erred by (1) refusing to allow his trial counsel to withdraw from representation due to an identified conflict of interest, and (2) denying his motion for new trial when he received ineffective assistance of counsel due to a conflict of interest. For the reasons set forth *infra*, we affirm.

The record shows that James Wyatt was appointed to represent White on or about June 3 to June 9, 2019. But less than one month later, on July 1, 2019, Wyatt filed a motion to withdraw as defense counsel based upon an alleged conflict of

interest in that his administrative assistant was related by marriage to the victim in the case. Following a hearing the next day, the trial court denied the motion.

At the July 2, 2019 hearing, Wyatt's assistant testified that her husband was a first cousin of the victim's father; the victim stayed at her home overnight as a young child; she was Facebook friends with the victim; she had not actually spoken to the victim in years; and she had not learned anything about the case from the victim. Later in the hearing, White indicated that he did not "have a particular problem" with his defense counsel's assistant being related to the victim but he did have "another problem[,]" which was that he wanted Wyatt to introduce evidence that he did not feel should be introduced, and he disagreed with Wyatt's approach to his defense "in general." But upon direct questioning by the court, as to whether White had "any problem" with Wyatt proceeding on the case due to his assistant's familial relationship with the victim, White responded, "Yes, sir. I was not aware of any of that information."

Nevertheless, when permitted to further explain his position on the alleged conflict of interest, White instead said that in the three weeks or so that Wyatt had been his attorney, they "[hadn't] discussed anything about the case." White also indicated that he had tried to discuss problems with the discovery in the case but

2

Wyatt did not want to do so. Wyatt then informed the court that he knew of "no legal way to get into evidence what [White wanted] to get into evidence." Ultimately, the trial court indicated that Wyatt would remain White's attorney because it did not see any conflict of interest, which was the basis for the motion to withdraw, and the case would proceed to trial the following Monday.

Despite this ruling, on July 8, 2019, another attorney—who had been made aware of the potential conflict of interest—appeared before the trial court in an attempt to take over White's representation, but the court permitted him to leave in light of its previous denial of the motion to withdraw. Then, rather than begin a trial, a plea colloquy ensued, and White again indicated that he was not satisfied with the services of Wyatt. But the court informed White that while he had the right to counsel, he did *not* have the right to a specific attorney. Eventually, the court accepted an *Alford* plea[1] from White and continued with a sentencing colloquy and imposition of a sentence despite White indicating that he wished to go to trial. On

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 38 (91 SCT 160, 27 LE2d 162) (1970) (holding that a trial court can accept a guilty plea when there is a strong factual basis for the plea and the defendant clearly expresses a desire to enter it despite the defendant's claims of innocence).

motion by counsel, White's plea was later withdrawn on the basis that he had clearly indicated his desire to go to trial.

Thereafter, Wyatt filed yet another motion to withdraw, this time on the basis that the relationship with White had deteriorated further, and he asked the trial court on August 27, 2019, whether he remained the attorney of record. The court responded that he remained White's attorney. Then, several days before trial, the court held another hearing on the potential withdrawal by Wyatt as defense counsel, in which White again complained about a lack of communication with his attorney and also mentioned the alleged conflict of interest due to the familial relation between Wyatt's assistant and the victim. But because there was no change in circumstances since the trial court's previous consideration of that issue, it again declined to find a conflict of interest.

The trial then took place from September 9 to 10, 2019, and the jury returned a guilty verdict on two of the five counts.[2] The trial court thereafter denied White's motion for new trial, and this appeal follows.

---

[2] White was convicted of child molestation and statutory rape, but was acquitted on counts of rape, enticing a child for indecent purposes, and false imprisonment.

4

1. To begin with, White argues the trial court abused its discretion and committed plain error by denying Wyatt's motion to withdraw as counsel due to a conflict of interest—namely the familial relationship between his assistant and the victim. We disagree.

Under Uniform Superior Court Rule 4.3, "[a]n attorney appearing of record in any matter pending in any superior court, who wishes to withdraw as counsel for any party, shall submit a written request to an appropriate judge of the court for an order permitting such withdrawal."[3] And thereafter, the request will be granted "unless in the judge's discretion to do so would delay the trial or otherwise interrupt the orderly operation of the court or be manifestly unfair to the client."[4]

In this regard, a trial court has discretion whether to grant or deny a motion to withdraw as counsel.[5] And further, an indigent defendant is "not entitled to have his

_____

[3] UNIF. SUPER. CT. R. 4.3 (1).

[4] *Id.*

[5] *See Rouse v. State*, 275 Ga. 605, 608-09 (9) (571 SE2d 353) (2002) ("[W]e conclude that the trial court did not abuse its discretion in denying the motion to withdraw filed by [the defendant's] counsel."); *Johnson v. State*, 283 Ga. App. 524, 528 (5) (642 SE2d 170) (2007) (noting that under *Rouse*, "[t]he decision whether to grant a motion to withdraw representation falls within the sound discretion of the trial court"), *overruled on other grounds by State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020); *see also Odum v. State*, 283 Ga. App. 291, 293-94 (1) (641 SE2d 279) (2007)

appointed counsel discharged unless he can demonstrate 'justifiable dissatisfaction with counsel, such as conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between counsel and client.'"[6]

---

("[When] a conflict does not arise or is not discovered until after the representation has begun, . . . we find nothing in [OCGA § 17-12-22, which controls public defenders' responses to conflicts of interest,] that would impact the trial court's authority to decide whether that conflict should permit defense counsel's withdrawal from the case. . . . Given that OCGA § 17-12-22 governs the conduct of public defenders' offices, we decline to construe it as affecting the trial courts' authority to apply their procedural rules. . . . The fair and efficient operation of our court system, therefore, demands that trial courts remain free to explore, when necessary, the adequacy of the basis of defense counsel's representations regarding a conflict of interest." (citation & punctuation omitted)).

[6] *Early v. State*, 310 Ga. App. 110, 114 (2) (c) (712 SE2d 565) (2011) (punctuation omitted); *accord Holsey v. State*, 291 Ga. App. 216, 218-19 (2) (661 SE2d 621) (2008); *see Bryant v. State*, 268 Ga. 616, 617 (2) n.4 (491 SE2d 320) (1997) ("[The defendant] failed to support the discharge of counsel by setting forth any justifiable dissatisfaction with counsel, such as conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between counsel and client."); *see also Bourassa v. State*, 345 Ga. App. 463, 471 (2) (811 SE2d 113) (2018) ("In [defendant's] motion for new trial, [he] argued that the trial court's denial of the motion to withdraw prohibited his trial counsel from effectively representing him. The trial court denied [the] motion on this ground, noting that there was no conflict that mandated trial counsel's withdrawal or that inhibited her from vigorously defending [defendant] and that trial counsel's request to withdraw was not timely. We review a trial judge's decision on a counsel's motion to withdraw for abuse of discretion. Here, we find no abuse of discretion on the part of the trial court in its determination as to the timeliness of trial counsel's motion and as to whether a conflict of interest was present." (citations & footnotes omitted)), *vacated on other grounds by Bourassa v. State*, 306 Ga. 329 (830 SE2d 189) (2019).

Here, following a hearing that took place less than one week before trial was to begin, the trial court denied defense counsel's motion to withdraw on the basis of an alleged conflict of interest owing to a familial relationship between his assistant and the victim. But before doing so, the court questioned defense counsel's assistant at length and engaged in a colloquy with White as to his concerns with his current representation. And thereafter, the court correctly concluded that there was no conflict of interest when defense counsel did not represent the victim and there was no indication that either he or his assistant possessed information about the case from the victim.[7] Additionally, White's complaints about his attorney were primarily related to mere disagreements about strategy. Under these particular circumstances, the trial court did not abuse its discretion in denying counsel's motion to withdraw.[8]

[7] *See Porter v. State*, 278 Ga. 694, 697 (6) (606 SE2d 240) (2004) ("[T]rial counsel did not represent the witness and nothing on the record suggests trial counsel was in possession of any information about the witness or the witness's previous prosecution. . . . Thus, no actual conflict of interest impacting trial counsel's representation of [defendant] having been shown, the trial court did not err in denying trial counsel's motion to withdraw." (citation omitted)); *see also infra* notes 13 to 20 & accompanying text.

[8] *See Billings v. State*, 308 Ga. App. 248, 253 (3) (707 SE2d 177) (2011) (holding that trial court did not abuse its discretion in denying attorney's motion to withdraw as counsel and rejecting defendant's stated dissatisfaction with the attorney's representation after the court made a "commendable and thorough investigation of the allegations"); *see supra* note 7. Given our conclusion that the trial

7

2. Finally, White contends his trial counsel rendered ineffective assistance due to his conflict of interest because counsel "had no interest in zealously representing [White] at trial as evinced by his attempts to withdraw from the representation . . . ." Again, we disagree.

In general, to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that "counsel's performance was deficient and that the deficient

court did not abuse its discretion in denying his counsel's motion to withdraw, we need not address White's assertion that the court committed "plain error" in doing so. In any event, as the Supreme Court of Georgia has recognized, "plain error" is codified so as to apply to evidentiary rulings and jury charges. *See Chrysler Grp., LLC v. Walden*, 303 Ga. 358, 370 (II) (b) n.4 (812 SE2d 244) (2018) ("We have adopted the same four-pronged standard for plain-error review that federal courts apply in criminal cases, first for jury instructions under OCGA § 17-8-58 (b), and then for evidentiary issues under OCGA § 24-1-103." (citations omitted)); *see also* OCGA § 24-1-103 (d) (providing that, for rulings on evidence, "[n]othing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court"); OCGA § 17-8-58 (b) ("Failure to object in accordance with subsection (a) of this [Criminal Procedure] Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section."). Indeed, our Supreme Court has declined to apply plain error review to other issues. *See Gates v. State*, 298 Ga. 324, 328 (4) (781 SE2d 772) (2016) ("[B]ecause [appellant] did not object to the prosecutor's argument at trial, he has waived review of these arguments on appeal, as the alleged errors here based on improper remarks during closing argument are not subject to review on appeal for plain error.").

8

performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[9] And the criminal defendant "must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct."[10] We will, then, affirm the trial court's determination with respect to whether a defendant received ineffective assistance of counsel unless the trial court's findings are clearly erroneous.[11]

Importantly, included within the constitutional right to counsel is "the right to representation that is free from conflicts of interest."[12] But for a defendant to prevail

---

[9] *Turner v. State*, 273 Ga. 340, 342 (2) (541 SE2d 641) (2001); *accord Simmons v. State*, 291 Ga. 705, 713 (10) (733 SE2d 280) (2012).

[10] *Turner*, 273 Ga. at 342 (2); *see Stafford v. State*, 312 Ga. 811, 819 (3) (a) (865 SE2d 116) (2021) ("To satisfy the deficiency prong, a defendant must demonstrate that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. This requires a defendant to overcome the strong presumption that trial counsel's performance was adequate.").

[11] *Turner*, 273 Ga. at 342 (2); *accord Soler v. State*, 354 Ga. App. 93, 96 (2) (840 SE2d 169) (2020).

[12] *Turner*, 273 Ga. at 342 (2) (a); *see Wood v. Georgia*, 450 U.S. 261, 271 (III) (101 SCt 1097, 67 LE2d 220) (1981) ("[When] a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."); *Sallie v. State*, 269 Ga. 446,

on his claim that his attorney was operating under a conflict of interest that violated his right to counsel, he must "show an *actual conflict of interest* that adversely affected his attorney's performance."[13] Indeed, in such cases, the critical question is whether the conflict "significantly affected the *representation*, not whether it affected the outcome of the underlying *proceedings*."[14] Additionally, the Supreme Court of Georgia has explained that the Sixth Amendment[15] conflict-of-interest jurisprudence

---

448 (2) (499 SE2d 897) (1998) ("Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest." (punctuation omitted)).

[13] *Turner*, 273 Ga. at 342 (2) (a) (emphasis supplied); *accord Henry v. State*, 269 Ga. 851, 854 (3) (507 SE2d 419) (1998); *see Capers v. State*, 220 Ga. App. 869, 873 (2) (470 SE2d 887) (1996) ("To establish ineffective assistance of counsel based upon conflict of interest, defendants must prove that their counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." (punctuation omitted)).

[14] *State v. Abernathy*, 289 Ga. 603, 604-05 (1) (715 SE2d 48) (2011).

[15] U.S. CONST. AMEND. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."); *see also* GA. CONST. art. I, § 1, ¶ XIV ("Every person charged with an offense against the laws of this state shall have the privilege and benefit of counsel; shall be furnished with a copy of the accusation or indictment and, on demand, with a list of the witnesses on whose testimony such charge is founded; shall

10

"generally is confined to situations [in which] the purported conflict stems from the attorney's simultaneous representation of multiple clients involved in the same legal issue."[16] And by way of example, our Supreme Court has explained that such a conflict may be established

> [when] counsel is shown to have refrained from raising a potentially meritorious issue due to the conflict; [when] counsel negotiates a plea bargain for more than one defendant in a case conditioned on acceptance of the plea by all such defendants; or [when] one of the State's witnesses was a current client of defense counsel in an unrelated criminal matter, thereby constraining counsel's ability to cross-examine the witness.[17]

have compulsory process to obtain the testimony of that person's own witnesses; and shall be confronted with the witnesses testifying against such person.").

[16] *Williams v. Moody*, 287 Ga. 665, 667 (2) n.4 (697 SE2d 199) (2010); *see Norton v. State*, 293 Ga. 332, 338 (7) (a) (745 SE2d 630) (2013) ("The question of whether an attorney labors under an actual conflict of interest for purposes of the Sixth Amendment generally arises when the purported conflict stems from the attorney's representation of multiple defendants concurrently." (punctuation omitted)).

[17] *Williams v. State*, 302 Ga. 404, 411 (3) (807 SE2d 418) (2017) (punctuation omitted); *accord Abernathy*, 289 Ga. at 605 (1); *see Edwards v. Lewis*, 283 Ga. 345, 350 (2) (658 SE2d 116) (2008) (holding that an actual conflict of interest existed when defense counsel did not pursue a jury array issue due to conflicting interests); *Burns v. State*, 281 Ga. 338, 341 (638 SE2d 299) (2006) (explaining that an actual conflict of interest may exist when co-defendants present antagonistic defenses at trial); *Mitchell v. State*, 261 Ga. 347, 349 (2) (405 SE2d 38) (1991) (holding that when a State witness was a current client of defense counsel in an unrelated criminal matter, counsel's ability to cross-examine the witness was constrained); *Tarwater v.*

Here, White contends his counsel (Wyatt) had a conflict of interest based upon his assistant's familial relationship with the victim by marriage. But a conflict of interest is involved if "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's duties to another current client, a former client, or a third person."[18] Suffice it to say, trial counsel's tenuous connection to the victim by way of his assistant's relation by marriage did not rise to the level of creating an actual conflict of interest.[19] Thus, because White "has

---

*State*, 259 Ga. 516, 518 (383 SE2d 883) (1989) (holding there was significant effect on representation when counsel negotiated a plea bargain for more than one defendant in a case conditioned on acceptance of the plea by all such defendants).

[18] *State v. Mamedov*, 288 Ga. 858, 860 (708 SE2d 279) (2011); *accord McNorrill v. State*, 338 Ga. App. 466, 473 (2) (789 SE2d 823) (2016); *see Tolbert v. State*, 298 Ga. 147, 152-53 (2) (b) (780 SE2d 298) (2015) (explaining that "the question would remain whether the potential conflict of interest for the lawyer had a significant and adverse effect on the way in which he represented [the defendant]"); *Blackshear v. State*, 274 Ga. 842, 844 (2) (560 SE2d 688) (2002) ("This Court and other courts have recognized that in some circumstances counsel's fee arrangement may create a conflict of interest with the client and the conflict can affect the adequacy of counsel's representation.").

[19] *See Norton*, 293 Ga. at 338 (7) (a) (holding that defense counsel's prior representation of the murder victim and having worked in close proximity to the murder victim did not give rise to a conflict of interest when there was no simultaneous representation and no connection between the prior representation of the victim and counsel's current representation of the defendant); *Jackson v. State*, 271 Ga. 705, 705-06 (1) (523 SE2d 871) (1999) (holding that a law partner's relation to victim's mother by marriage and his representation of her in the probate of the

12

not shown that trial counsel was under an actual conflict of interest that adversely affected counsel's performance, his contention of ineffective assistance of counsel due to a conflict of interest must fail."[20]

Moreover, to the extent White argues defense counsel did not "vigorously" argue the motions to withdraw and did not meet with him a sufficient number of times prior to trial, his enumeration of error still fails. As we explained *supra*, for purposes of the motions to withdraw, there was no conflict of interest under the Sixth Amendment. And as to the second contention, White has not established how he was

victim's estate did not deprive defendant of effective assistance of counsel due to a conflict of interest when defendant did not show how this "caused divided loyalties, compromised his attorney's representation of him, or influenced his decision to plead guilty"); *Hill v. State*, 269 Ga. 23, 25 (2) (494 SE2d 661) (1998) (holding that the "remoteness of trial counsel's earlier representation of [the sole witness to the murder], lead us to reject [the defendant's] claim that her trial counsel was impermissibly conflicted"); *Capers*, 220 Ga. App. at 874 (2) ("[The defendant] . . . failed to demonstrate that an actual conflict of interest adversely affected his lawyer's performance. . . . [The defendant] failed to demonstrate that his counsel's prior relationship with [the co-defendant] limited the cross-examination or his counsel's loyalty was divided. . . . This evidence is not sufficient to establish that the defense was actually impaired by counsel's prior representation of [the co-defendant].").

[20] *Turner*, 273 Ga. at 343 (2) (a); *see Hill*, 269 Ga. at 24-25 (3) (rejecting claim of ineffective assistance of trial counsel based on counsel's prior representation of prosecution witness in an unrelated criminal matter when defendant failed to show an adverse effect on the representation); *see also Capers*, 220 Ga. App. at 874 (2) ("A mere possibility of conflict is insufficient to impugn a criminal conviction amply supported by competent evidence." (punctuation omitted)).

*prejudiced* by counsel's alleged failures. Indeed, White has made no showing as to what, if anything, would have differed at trial had defense counsel further consulted with him, and thus this claim also fails.[21]

For all these reasons, we affirm White's convictions.

*Judgment affirmed. Mercier and Markle, JJ., concur.*

---

[21] *See Hendrix v. State*, 298 Ga. 60, 64 (2) (a) (779 SE2d 322) (2015) ("In the context of a failure-to-consult claim . . . , the defendant must establish that his counsel's failure to consult was prejudicial to his defense, i.e., that there is a reasonable probability that, but for counsel's failure to consult, the result of his trial would have been different."); *Watkins v. State*, 361 Ga. App. 55, 62-63 (6) (d) (862 SE2d 720) (2021) (holding that defendant failed to show how additional consultation would have affected his case, and thus counsel's alleged failure to consult did not constitute ineffective assistance of trial counsel).