## S11A0833. HENDRICKS v. THE STATE.

(719 SE2d 466)

HINES, Justice.

Dewayne Lee Hendricks appeals his convictions for malice murder, aggravated assault, possession of a deadly weapon at a

public gathering, possession of a firearm by a convicted felon, and possession of a firearm during the commission of aggravated assault, all in connection with the shooting death of Maurice Collier, and the non-fatal shootings of Deanthony Fleming and Akimbee Burns.[1] For the reasons that follow, we affirm.

Construed to support the verdicts, the evidence showed that on the evening of January 17, 2004, Hendricks was employed as a bouncer at the Boom Boom Room dance club. There were many patrons in the club, one of whom, Corey Young, confronted another, Corey Brooks, regarding a debt for a car. Hendricks approached the men and told them they could not fight in the club. Nonetheless, a fight erupted, in which Hendricks was involved. Collier, who had not fought, produced a pistol and shot into the air. In response, Hendricks went to Collier and shouted "shoot me." Collier replied that he did not wish to shoot Hendricks, but only wanted to stop the fight to protect a friend. As Collier put away his pistol and turned to walk away, Hendricks produced a pistol and shot in Collier's direction. Collier fled through the crowd, and Hendricks followed, firing as he did. Collier was able to exit the front door of the club and go to the parking lot. He had been struck by three bullets and was driven to a hospital by friends. He died there of his gunshot wounds. Fleming

---

[1] The crimes occurred on January 17, 2004. On April 5, 2005, a Ben Hill County grand jury indicted Hendricks for malice murder, felony murder while in the commission of the crime of possession of a firearm by a convicted felon, the aggravated assault of Collier, the aggravated assault of Fleming, the aggravated assault of Burns, possession of a deadly weapon at a public gathering, possession of a firearm by a convicted felon, possession of a firearm during the commission of the aggravated assault of Collier, possession of a firearm during the commission of the aggravated assault of Burns, and possession of a firearm during the commission of the aggravated assault of Fleming. Hendricks was tried before a jury October 3-6, 2005, and found guilty of all charges. On October 11, 2005, the trial court sentenced Hendricks to: life in prison for malice murder; a term of 20 years in prison for the aggravated assault of Fleming, to be served consecutively to the life sentence; a term of 20 years in prison for the aggravated assault of Burns, to be served concurrently with the sentence for the aggravated assault of Fleming; 12 months in prison for possession of a deadly weapon at a public gathering, to be served concurrently with the sentence for the aggravated assault of Fleming; five years in prison for possession of a firearm by a convicted felon, to be served concurrently with the sentence for the aggravated assault of Fleming; five years in prison for possession of a firearm during the commission of the aggravated assault of Collier, to be served consecutively to the sentence for the aggravated assault of Fleming; five years in prison for possession of a firearm during the commission of the aggravated assault of Burns, to be served concurrently with the sentence for possession of a firearm during the commission of the aggravated assault of Collier; and five years in prison for possession of a firearm during the commission of the aggravated assault of Fleming, to be served concurrently with the sentence for possession of a firearm during the commission of the aggravated assault of Collier. The felony murder of Collier stood vacated by operation of law, and the aggravated assault of Collier merged with the malice murder. *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Hendricks moved for a new trial on October 21, 2005, and amended his motion on September 22, 2010. The motion as amended was denied on December 22, 2010, Hendricks filed a notice of appeal on January 14, 2011, his appeal was docketed in this Court for the April 2011 term, and submitted for decision on the briefs.

and Burns were also injured by bullets fired from Hendricks's pistol.

1. Eyewitnesses saw Hendricks fire toward Collier and continue to fire into the crowd. Under the doctrine of transferred intent, and the facts of this case, it is irrelevant whether Hendricks intended to shoot Fleming and Burns, or only Collier. *Culler v. State*, 277 Ga. 717, 720 (4) (594 SE2d 631) (2004). It is for the jury to resolve conflicts in the evidence and questions of witness credibility, not this Court. *Tolbert v. State*, 282 Ga. 254, 256 (1) (647 SE2d 555) (2007). The evidence was sufficient to enable a rational trier of fact to find Hendricks guilty beyond a reasonable doubt of the other crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hendricks contends that the State violated the requirements of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). "The prosecution, upon a *Brady* motion, has the duty to produce anything that is exculpatory or impeaching." *Vega v. State*, 285 Ga. 32, 33-34 (2) (673 SE2d 223) (2009) (Citation and punctuation omitted.). But, despite declaring that the State had undisclosed "negotiations and deals" with witnesses, Hendricks does not cite to any evidence indicating such, or evidence that otherwise shows a *Brady* violation, and he thus fails to meet his burden. See *Simmons v. State*, 271 Ga. 563, 566 (3) (522 SE2d 451) (1999).

3. At trial, the State informed the court that a defense witness, Latonya Hendricks Lockhart, had been in the courtroom during a portion of the trial, including the testimony of other witnesses. Outside the jury's presence, the State moved that Lockhart be excluded from testifying. The court questioned Lockhart, and ruled that she could testify. But, before she did so, the court informed the jury of the violation of the rule of sequestration, and instructed it that the effect of the violation regarding the weight and credit of her testimony was for the jury's determination.

Hendricks argues that the trial court erred in not granting his motion for mistrial as to this matter. However, Hendricks misstates the record; at no time did he move for a mistrial in regard to Lockhart's violation of the rule of sequestration, or in response to the court's instruction to the jury. In any event, a motion for mistrial in response to the court's instruction regarding the violation of the rule of sequestration would have been unavailing. See *Glass v. State*, 289 Ga. 542, 546 (4) (712 SE2d 851) (2011).

The portion of the transcript which Hendricks cites regarding when he made his motion for mistrial clearly does not relate to Lockhart. After one of Hendricks's witnesses was excused, and the jury was sent out of the courtroom for a lunch break, the State first raised the matter of Lockhart's violation of the rule of sequestration. Counsel for Hendricks stated, "I'm going to move for a mistrial

because of [the prosecutor's] recitation to the jury that my witness is acting improperly without any kind of proof." The State responded that it had only been exercising its right to a thorough cross-examination, and that in any event, the motion was untimely; the trial court then denied the motion for a mistrial. To the extent that Hendricks's enumeration of error embraces this motion for a mistrial,[2] without a contemporaneous objection, no error is shown in the denial of the motion. See *Lowe v. State*, 287 Ga. 314, 315 (2) (a) (695 SE2d 623) (2010).

4. Hendricks claims that his trial counsel failed to provide effective representation in several respects. In order to prevail on this claim, he must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, Hendricks must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Hendricks contends trial counsel was ineffective in failing to request a jury instruction on the defense of accident. But, as counsel testified during the hearing on the motion for new trial, not only was there no evidence to support an instruction on accident, but the theory of defense that counsel presented to the jury was that Hendricks did not discharge a firearm at all, and this argument would be inconsistent with an accident defense. "Counsel's decision as to which requests to charge to pursue in light of the defense theory is a strategic one." *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

(b) Hendricks asserts that it was error for trial counsel not to call

---

[2] Hendricks did not indicate to the trial court to which "recitation" of the State he referred, or even if the alleged incident pertained to the most recently examined defense witness, nor has he provided such information to this Court. See Supreme Court Rule 31.

expert witnesses, but does not show what favorable evidence would have been elicited from such witnesses, or even suggest in what areas such witnesses should have expertise. Accordingly, he fails to meet his burden of showing both deficient performance on counsel's part, and prejudice arising from such performance. *Lawrence v. State*, 286 Ga. 533, 534 (2) (690 SE2d 801) (2010).

(c) Hendricks also claims that counsel did not confer with him adequately before trial.[3] However, there is "no magic amount of time which counsel must spend in actual conference with his client." *Harris v. State*, 279 Ga. 304, 307 (3) (b) (612 SE2d 789) (2005) (Citations and punctuation omitted.). Further, Hendricks admitted he was presented with a plea offer, discussed the decision whether to testify with counsel the day before he testified, and that although the particulars of his testimony were not discussed, counsel knew Hendricks's version of events. Hendricks fails to demonstrate how spending additional time with counsel would have changed the outcome of his case. *Ruffin v. State*, 283 Ga. 87, 91 (12) (d) (656 SE2d 140) (2008).

(d) Hendricks contends that trial counsel should have called three witnesses (Linda King, Eric Boney, and Keith McGill) to testify at trial. At the time of the crimes, King was a law enforcement officer who investigated the shootings. During the hearing on the motion for new trial, counsel testified that he did not believe that it would have been productive to call King to testify on behalf of the defense as, at the time of trial, she had been relieved of her law enforcement position for malfeasance, had family members under federal indictment, and was potentially facing a federal indictment herself, all of which contributed to her having a poor reputation in the community. Hendricks never asked counsel why he did not call Boney[4] or McGill.[5]

The decision of which witnesses to call is a tactical one within the exclusive province of the attorney after consultation with the client, and [Hendricks] has failed to over-

---

[3] Counsel testified during the hearing on the motion for new trial that he met with Hendricks three or four times before trial, for at least 30 minutes each time, and that the defense team, which included an investigator and at least one additional attorney, "prepared the case as well as we could."

[4] Boney testified during the hearing on the motion for new trial that he was present at the time of the shootings, and would have been willing to testify if asked, but that he never contacted Hendricks or anyone else to say that he might be of use to Hendricks's defense. He also testified that he did not observe Hendricks with a handgun or see him do "anything criminally . . . like shooting"; no further details of his potential testimony about the shootings were elicited.

[5] McGill testified during the hearing on the motion for new trial that he was present at the time of the shootings, would have been willing to testify if asked, and he did not observe Hendricks "do anything criminally or anything wrong"; no further details of his potential testimony about the shootings were elicited.

come the strong presumption that his attorney's tactical decision to forego putting the subject witnesses on the stand was within the broad range of reasonable professional conduct. [Cit.]

*Smiley v. State*, 288 Ga. 635, 638 (2) (b) (706 SE2d 425) (2011). See also *Vaughns v. State*, 274 Ga. 13, 16 (6) (c) (549 SE2d 86) (2001).

(e) During the hearing on the motion for new trial, counsel testified that he had no specific recollection as to whether he advised Lockhart regarding the rule of sequestration. See Division 3, supra. Although Hendricks asserts that it was deficient performance for counsel to fail to properly advise Lockhart regarding the rule, assuming that such is the case, Hendricks fails to show that there is a reasonable probability that the outcome of his trial would have been different if counsel had done so, Lockhart had been properly sequestered, and she had testified to the same effect, but without the trial court instructing the jury that a violation of the rule had occurred.[6] *Smith*, supra. See also *Powell v. State*, 271 Ga. 575, 576 (3) (522 SE2d 656) (1999).

5. After his convictions, Hendricks moved for a new trial, asserting the general grounds. He later amended his motion to assert additional grounds, including that: trial counsel's assistance was ineffective; the trial should have been bifurcated; the State failed to provide *Brady*, supra, material; the trial court erred in failing to grant a mistrial; the trial court erred in admitting into evidence his prior convictions; the trial court erred in allowing his character to come into evidence; and the instructions to the jury were insufficient. Before the hearing on the motion for new trial, Hendricks subpoenaed several witnesses. Upon the State's motion, the trial court inquired as to the purpose of some of these witnesses. After discussion, and Hendricks's proffer of what the contents of the various witnesses' testimony would be, the court excluded the testimony of three witnesses, and Hendricks asserts that this was error.

Of course, it is not error to exclude irrelevant evidence from a hearing on a motion for new trial. See *Skaggs v. State*, 278 Ga. 19, 21-22 (3) (596 SE2d 159) (2004). And, "[t]he law is settled that a post-trial declaration by a State's witness that [his] former testimony was false is not a ground for a new trial." *Leon v. State*, 237 Ga. App. 99, 104 (3) (b) (513 SE2d 227) (1999) (Citations and punctuation

---

[6] On direct testimony, Lockhart testified that Collier shot into the air; she lay on the floor with her head covered; Collier was still shooting, and she did not look up until the shooting stopped, at which time Hendricks was inside the club by the door; the shooting continued outside; and she did not see Hendricks with a handgun, but could not state with certainty that he did not have one.

omitted.). See also *Bryant v. State*, 268 Ga. 664, 665 (3) (492 SE2d 868) (1997); *Stroud v. State*, 247 Ga. 395 (276 SE2d 597) (1981).

One of the excluded witnesses was King, who had investigated the shootings at the club. See Division 4 (d), supra. In his proffer, Hendricks stated that, had King been called to testify at trial, her testimony would have been able to impeach witnesses Sears and Murphy as having changed their versions of events between her investigation and their testimony at trial. The State noted that, during the previous session of the hearing on the motion for new trial, defense counsel had testified that he did not believe King would have been a productive witness, and gave his reasons for that. The State further noted that the statements Sears and Murphy gave to King were used to impeach their testimony at trial. The court ruled that it would not hear King's testimony if her testimony merely would be that she could have impeached witnesses by their prior statements when there were transcripts of the prior interviews; Hendricks did not make any further proffer of what King might have testified.

The other two witnesses whose testimony was excluded from the hearing had testified at trial. Hendricks proffered that Corey Young would testify at the hearing on the motion for new trial that Hendricks was, in fact, not the shooter, and that he did not testify so at trial because no one asked him. Young's trial testimony was that he saw no one with a gun. And, Hendricks proffered that Deanthony Fleming would testify at the hearing on the motion for new trial that he was "forced" to testify at trial. As the State noted, at trial, Fleming had testified that he had not seen Hendricks with a handgun, and only after having his memory refreshed by his prior statement to King did Fleming testify that Hendricks had a pistol.

Hendricks now contends that if either Young or Fleming had any agreement with the State regarding their trial testimony, the court's ruling that they would not be permitted to testify at the hearing on the motion for new trial prevented the introduction of *Brady* material at that hearing. But, at the hearing, he proffered no evidence of a *Brady* violation that would be shown by their testimony,[7] and his speculation in this Court that such might have been produced by questioning does not establish any error or prejudice from the trial court's rulings.

*Judgments affirmed. All the Justices concur.*

---

[7] In particular, regarding Fleming, Hendricks stated that he was "locked up," "wanted to get out," and was "forced" to testify, but proffered nothing as to who applied what force, and did not proffer that Fleming would testify that he had made any agreement with the State in regards to his testimony.

DECIDED NOVEMBER 29, 2011 —
RECONSIDERATION DENIED DECEMBER 8, 2011.

*Veronica E. Brinson,* for appellant.

*Denise D. Fachini, District Attorney, Cheri L. Nichols, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christopher R. Johnson, Assistant Attorney General,* for appellee.