**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 15, 2018**

# In the Court of Appeals of Georgia

A17A1602. BOURASSA v. THE STATE.

BETHEL, Judge.

Jeffrey Alan Bourassa appeals from the denial of his motion for a new trial following his conviction on one count of possessing more than one ounce of marijuana, one count of conspiracy, and one count of violating the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO") by using a telephone to arrange for the purchase of more than one ounce of marijuana. On appeal, Bourassa argues that the trial court erred in concluding that he lacked standing to suppress records of telecommunications that were intercepted by the Douglas County Sheriff's Office. Bourassa also argues that the trial court erred in ordering Bourassa's trial counsel to continue representing him even though, prior to trial, trial counsel had disclosed to the court a conflict of interest which she believed required her withdrawal from the

case. Finally, Bourassa, whose trial counsel also represented him on his motion for a new trial, seeks remand of this case so that the trial court can conduct an evidentiary hearing on whether trial counsel provided ineffective assistance of counsel.

We affirm the trial court's denial of Bourassa's motion to suppress, as we agree with the trial court that Bourassa did not establish his standing to challenge the introduction of that evidence. We also affirm the trial court's denial of trial counsel's motion to withdraw, because the motion did not disclose an actual active conflict and because it was untimely. However, as set forth more fully below, while we are able resolve some of Bourassa's claims of ineffectiveness based on the record before us, we remand this case for further consideration of his other claims that require the development of an appellate record.

1. Bourassa first argues that the trial court erred when it ruled that he did not have standing to challenge the introduction of certain surreptitiously recorded telephone calls against him at trial. We disagree.

The record reflects that the Douglas County Sheriff's Office (DCSO) obtained investigative warrants for the interception of electronic communications for several phone numbers connected to certain individuals who DCSO had learned, through confidential informants and a series of planned drug buys by undercover agents, were

part of an organization that was selling marijuana. Calls placed to and from those numbers were recorded pursuant to the warrants. None of the targeted phone numbers belonged to or were associated with Bourassa.

Through the evidence gleaned from the monitoring of those calls and other investigative techniques, Bourassa and several other defendants were arrested and charged, *inter alia*, with possession of marijuana, conspiracy to possess marijuana, and violation of the Georgia RICO statute. Bourassa moved in limine to suppress the contents of several of the recordings, arguing that they violated his Fourth Amendment right against unreasonable search and seizure.

The trial court denied Bourassa's motion to suppress. The court noted specifically that Bourassa did not call any witnesses at the suppression hearing or offer any evidence that he was party to any of the conversations intercepted by DCSO. The trial court also noted that Bourassa did not concede or stipulate that he was a party to any of those conversations.[1]

---

[1] The trial court reaffirmed its ruling on this issue in its order denying Bourassa's motion for a new trial.

As our Supreme Court has noted, "demonstrating standing is a threshold burden for suppression of the evidence." *Hampton v. State*, 295 Ga. 665, 669 (1) (763 SE2d 467) (2014) (citation omitted). Further,

> a criminal defendant has standing to suppress evidence obtained through an illegal search or seizure only in the situation in which his or her own rights are violated, as such rights are personal and are not to be asserted vicariously. And, an individual can successfully argue for suppression of the product of a Fourth Amendment violation only if that person's rights were violated by the search itself; suppression of the evidence is not available to one who is aggrieved solely by the introduction of damaging evidence because the exclusionary rule is to protect individuals whose Fourth Amendment rights have been violated.

*Id*. (citations omitted). Standing to suppress recordings of surreptitiously recorded phone calls arises when the person seeking suppression was a party to any intercepted communication or a person against whom the interception was directed. *See Deleon-Alvarez v. State*, 324 Ga. App. 694, 699 (2) (a) (751 SE2d 497) (2013) (standing arises if the movant is the subscriber of the phone that is tapped or if his voice can be heard on any of the intercepted calls the State seeks to introduce into evidence).

In this case, nothing in the record established that the targeted phone numbers belonged to Bourassa (indeed, the record reflects otherwise) , and Bourassa did not

4

offer or point to any testimony or other evidence that established that his voice could be heard in the recordings the State sought to introduce. Instead, Bourassa relied exclusively on testimony elicited in cross examination from the DCSO officer who obtained the warrants. First, defense counsel asked the officer if Bourassa had been heard on any of the calls placed to or from the targeted numbers:

**Q**: Was [Bourassa] ever part of the call or party on the call?

**A**: He was identified–or his phone number was identified as one of the phone calls was calling us, yes.

The DSCO officer indicated that his office connected the incoming number to Bourassa by searching for the number on Facebook. The number from which the call was placed was associated with a Facebook account that belonged to another suspect in the case. Bourassa was later identified as a user of the phone associated with that number after he called the target of the surveillance to set up a drug deal and was later photographed by DCSO.

In response to further questioning from defense counsel, the officer indicated his *belief* that Bourassa could be heard on the recorded calls:

5

**Q:** Okay. And so it's your belief and testimony that [Bourassa] was a party to some of the phone calls that were tapped, that were listened to on this tap?

**A:** Yeah, he was part of the conversations that we received.

The DCSO officer went on to testify that DCSO never positively identified Bourassa as a speaker on any of the calls. He indicated that, in a call that was monitored, a male voice called to set up a drug transaction. Bourassa was then observed by DCSO coming to the arranged location of the transaction at the time that had been specified on the monitored call, photographed at the scene, and then followed afterward. According to the DCSO officer, "all evidence indicated it was [Bourassa]."

On re-direct examination, the DCSO officer stated that he had never met or interviewed Bourassa and had no reason to know what his voice sounded like. The officer stated his belief that it was Bourassa's voice on the recorded calls "[b]ased on the evidence we developed." The officer noted that Bourassa had never admitted that it was his voice on the recorded calls.

6

We agree with the trial court that the statements elicited in this line of questioning, including those posed by defense counsel, are insufficient to establish Bourassa's standing to suppress the recordings. The questions asked by Bourassa's counsel on cross-examination were not an offer of evidence, nor did they provide proof that it was in fact Bourassa's voice that could be heard. Those questions, and the responses of the DCSO officer, merely confirmed the State's theory that it was Bourassa's voice that could be heard on the recorded calls.

The Eleventh Circuit and the U.S. district courts in Georgia have repeatedly ruled that reliance on the government's position, contention, or theory to establish standing to suppress a search is insufficient, specifically noting the burden that is placed on the movant to stipulate as to standing or to bring forward evidence establishing standing that is independent of the government's evidence. *See, e.g., United States v. Bell*, 218 F. Appx. 885, 895 (II) (A) (11th Cir. 2007) (holding that defendant "cannot adopt the government's evidence . . . for the limited purpose of establishing standing while challenging the validity of the same evidence."); *United States v. Chavez-Macial*, 2012 U.S. Dist. LEXIS 183038 at \*52-55, 2012 WL 6742323 (N.D. Ga. Dec. 7, 2012) (recommending denial of motion to suppress for

lack of standing where defendant called no witnesses and relied on government's theory that he was participant in recorded call).

In *Chavez-Macial*, the defendant argued that he had standing to challenge the introduction of recorded phone calls, *inter alia*, because the government alleged that his voice could be heard on the calls and because government records of the calls identify one of the participants in the calls by an alias alleged to have been used by the defendant. *Id*. However, the defendant never presented evidence or stipulated that he used that alias or that he participated in the calls. *Id*. Thus, although the government advanced the theory that the defendant could be heard on the communications at issue, the trial court denied the defendant's motion to suppress for lack of standing because the defendant neither admitted, nor pointed to any direct evidence establishing, that he was a party to the communications at issue. *Id*.

In light of the apparent absence of decisional law from this Court and the Georgia Supreme Court on this issue, we adopt the reasoning expressed in *Bell* and *Chavez-Macial* by the Eleventh Circuit and the Northern District of Georgia, respectively, as these decisions properly express the burden a defendant must carry in establishing his standing to challenge the State's use of intercepted communications under the Fourth Amendment. In this case, Bourassa did not

8

stipulate or admit that his voice could be heard on the calls at issue. Although the State's witness believed that Bourassa's voice could be heard on the recordings, this was merely a conclusion based on other circumstantial evidence. Thus, because no evidence presented by the State or adduced through cross-examination established that Bourassa was a party to the calls, the trial court was authorized to find that Bourassa did not satisfy his burden of establishing standing. We therefore affirm the trial court's denial of his motion to suppress the recorded calls.

2. Bourassa next argues that the trial court erred when it denied his trial counsel's motion to withdraw as counsel before trial due to an alleged conflict of interest that was both unresolvable and unwaivable. The record reflects that Bourassa's trial counsel filed a motion to withdraw from representation with the trial court on June 22, 2015, the morning trial was to begin.

According to statements made to the trial court by Bourassa's trial counsel and a written proffer offered to the trial court,[2] trial counsel had previously represented Bourassa's mother in a criminal action in Cobb County, an action in which Bourassa was a co-defendant. As part of this case, Bourassa's trial counsel noted that the State

---

[2] Trial counsel's proffer was initially filed under seal but was later unsealed pursuant to a trial court order issued on June 22, 2016 on the State's motion as part of post-trial proceedings.

9

had filed notice of its intent to introduce evidence of the indictment from the Cobb County case as well as evidence of several phone calls between Bourassa and his mother that were recorded via wiretap. Bourassa's trial counsel suggested that the State planned to question Bourassa's co-defendant about efforts by Bourassa's mother in the current case to improperly influence the co-defendant such that she would not testify against Bourassa. According to Bourassa's trial counsel, the State planned to argue that Bourassa's co-defendant in this case was scared of him and that he coerced her into working as his "drug mule." Counsel further suggested that the State planned to question the co-defendant (who had agreed to plead guilty and testify against Bourassa) about this alleged coercion and introduce evidence from the Cobb County case that Bourassa had previously intimidated his mother into taking similar actions.

Bourassa's trial counsel noted in her proffer that, in previously representing Bourassa's mother, she had filed notice of her intent to pursue an affirmative defense of coercion on behalf of Bourassa's mother. According to the proffer and statements before the trial court, trial counsel and Bourassa's mother disagreed about the use of this defense, and Bourassa's mother "strongly objected" to its use at trial. Despite these objections, because trial counsel believed this to be a viable defense, she filed

10

the notice with the court so that she could preserve the right to raise the defense in the Cobb County trial.

As part of her proffer in this case, trial counsel also argued that if she were not permitted to withdraw, she would be forced to question Bourassa's co-defendant about efforts by Bourassa's mother to improperly influence her testimony. Additionally, trial counsel noted that she would be forced to call Bourassa's mother to rebut that testimony. Trial counsel argued that, because the State planned to introduce evidence from the Cobb County trial, including the filing of the mother's intent to pursue the coercion defense, it would place trial counsel in the untenable position of questioning her former client about matters that arose from her representation and about which she had privileged information, including disagreements they had about the decision to file notice of intent to pursue the coercion defense in the Cobb County case. Trial counsel argued that this scenario would also potentially require her to testify in order to clarify the decision to file the notice of intent, which would result in trial counsel becoming a witness in the case and subject her to cross-examination on privileged matters.

Trial counsel argued in her proffer that her motion to withdraw was not for the purpose of delay, as she only learned of this conflict three days before when she

11

learned of the State's plan to introduce evidence from the Cobb County trial and to introduce evidence that Bourassa's mother had attempted to improperly influence a witness in this case. In response, the State noted at a hearing before the trial court that Bourassa's trial counsel had been given notice that the State planned to use information from the Cobb County case as much as two years earlier as part of pre-trial discovery, noting that a more recent filing by the State in regard to the evidence of the Cobb County case was to comply with the notice requirement of Rule 404 (b) that had gone into effect during the pendency of the case.

At the hearing where these issues were addressed, the trial court noted that Bourassa's trial counsel had no conflict as it relates to any testimony that might be offered by Bourassa's co-defendant. The trial court also shared its view that so long as the State did not plan to call Bourassa's mother as a witness, there would be no conflict, as trial counsel would not be in the position of having to question her former client. The court noted that trial counsel was not actively representing Bourassa's mother at the time of the hearing. Noting that disqualification of counsel was only appropriate where defense counsel was actively representing a potential witness in the case, it ruled that Bourassa's trial counsel did not have an active conflict of interest that would warrant disqualification. The trial court further noted that it could

12

potentially reconsider its ruling as the trial developed and in light of any potential conflicts that formed based on the testimony presented, but it denied the motion.

At trial, before the State called a witness that was going to discuss evidence of the Cobb County case, the prosecutor stated the following to the trial court outside the jury's presence:

> [B]ased on some of the pre-trial motions . . . when we ask about relationships that are involved in the Cobb County organization, we are only going to be discussing the women with whom the defendant had been or was involved with at the time of that investigation. We are not going to make any mention of his mother, we're not going to talk about her at all. So that is part of the source of the conflict that has been raised earlier and the State is going to make every effort to avoid any mention of that whatsoever.

The record reflects that evidence of the Cobb County case was admitted under Rule 404(b) for the purpose of establishing his knowledge, intent, identity, plan, or absence of mistake, based on his prior involvement in a drug trafficking organization. The trial court gave a limiting instruction to the jury, indicating that evidence of the Cobb County case could be used only for those purposes. The State's witness who testified in regard to the Cobb County case was asked no questions by the State regarding the involvement of Bourassa's mother in that case, nor did he testify in regard to any

13

violent tendency on the part of Bourassa or any effort to coerce witnesses or co-defendants in the prior case.[3]

Bourassa's co-defendant was called as a witness at trial by the State. She testified that she was aware of Bourassa's convictions on the Cobb County RICO charges and that she had spoken with Bourassa's trial counsel about his case in Cobb County and had offered to testify on his behalf at a probation revocation hearing that took place after he was arrested on the Douglas County charges that are the subject of this case. She also testified that, after Bourassa's arrest in Douglas County, she had contact with Bourassa and his mother and had initially indicated to both that she planned to testify on Bourassa's behalf to aid his defense in the Douglas County case.

However, Bourassa and his mother later became aware that the co-defendant had agreed to be interviewed by law enforcement, which prompted them to question her loyalty to Bourassa. The co-defendant was living at Bourassa's mother's house at the time, and she indicated that both Bourassa and his mother "kept tabs" on her

---

[3] On cross-examination, the witness was asked whether Bourassa's mother and brother, who had been co-defendants in the Cobb County case, had their charges dropped. The witness indicated that he knew the mother's charges had been dropped, that she had been the subject of a civil forfeiture suit that had also been dropped, and that she had brought a civil rights suit against an assistant district attorney and several law enforcement officers in Cobb County. This appears to be the only mention of Bourassa's mother during the testimony of this witness.

during this time. She testified that both Bourassa and his mother had instructed her not to take a plea bargain in the case. The co-defendant testified that she later moved out of Bourassa's mother's house after she and the mother had a falling out and that she ultimately accepted a plea bargain in the case. She agreed to testify against Bourassa as part of her plea.

After the co-defendant's testimony, Bourassa's trial counsel again moved to withdraw as counsel due to the conflict of interest she had previously alleged, arguing that the co-defendant's testimony that she had been under the control of Bourassa and his mother could only be refuted by calling the mother to the stand to testify and by having trial counsel testify about prior conversations she had with the co-defendant. The State countered that the co-defendant had not relied upon a coercion defense in her own case and that her testimony and other evidence presented at trial did not suggest she had been coerced by Bourassa or anyone else to enter the drug trade or to testify on his behalf. Trial counsel's renewed motion to withdraw was denied.

Bourassa's mother was later called by Bourassa to testify, where she testified about her relationship with Bourassa's co-defendant and claimed that she had never tried to influence her testimony. The mother was not asked any questions about the

prior case in Cobb County. In closing, however, the State argued that Bourassa had attempted to intimidate the co-defendant.

Bourassa was convicted on each count against him. In his motion for new trial, Bourassa argued that the trial court's denial of the motion to withdraw prohibited his trial counsel from effectively representing him.[4] The trial court denied Bourassa's motion on this ground, noting that there was no conflict that mandated trial counsel's withdrawal or that inhibited her from vigorously defending Bourassa and that trial counsel's request to withdraw was not timely.

We review a trial judge's decision on a counsel's motion to withdraw for abuse of discretion. *Odum v. State*, 283 Ga. App. 291, 294-95 (2) (641 SE2d 279) (2007). Here, we find no abuse of discretion on the part of the trial court in its determination

---

[4] Bourassa further argued that misconduct by the State (namely alleged withholding of information held by the State regarding interviews it conducted with a State witness before trial and its failure to make the witness available for an interview) had caused his counsel to be untimely in the filing of her motion to withdraw. Counsel claimed that had the information regarding the witness's testimony been made available to her when requested, she would have been able to fully evaluate her potential conflict of interest and move to withdraw earlier in the case. The trial court rejected this argument, noting that the information in the interview of the witness by the State was "useless," as it related only tangentially to the underlying case.

16

as to the timeliness of trial counsel's motion and as to whether a conflict of interest was present.

First with regard to timeliness, although trial counsel claimed to have first become aware of the potential conflict on the eve of trial, the statements by Bourassa's co-defendant that were alleged to have given rise to the conflict were produced by the State in discovery almost two years prior to trial. This was sufficient time in which counsel could have analyzed any potential conflict in light of the evidence provided in discovery and notified the court of any such conflict. Trial counsel failed to do so, and the trial court did not abuse its discretion in denying the request to withdraw. *See* Uniform Superior Court Rule 4.3 (permitting trial judge discretion to deny request where withdrawal would delay the trial or otherwise interrupt the orderly operation of the court).

Second, we agree with the trial court that trial counsel's pre-trial proffer did not indicate that she was subject to any active, actual conflict of interest and that no such conflict developed during the course of the trial. Bourassa's trial counsel was no longer representing the mother at the time of Bourassa's trial, as that representation appears to have ended when the mother's case in Cobb County was dead-docketed.

17

Moreover, we agree with the trial court that because trial counsel was not actively representing the mother at the time, no conflict of interest developed. *See Weeks v. State*, 190 Ga. App. 373, 374 (1) (378 SE2d 895) (1989). In *Weeks*, defense counsel had previously represented a witness in the case, but the attorney-client relationship between counsel and the witness ended at the conclusion of the witness's case. *Id*. at 374 (1). This Court determined that because the attorney-client relationship with the witness "had been entirely severed" at the time of the defendant's trial, trial counsel was not subject to an actual, active conflict of interest and could question the witness. *Id*. Therefore, no reversal of the defendant's conviction was warranted. *Id*.

In this case, Bourassa's mother was called as a witness. However, that testimony appears to have been offered solely for the purpose of rebutting a theory advanced by the State that Bourassa and his mother had tried to improperly influence the co-defendant. Neither Bourassa nor the State asked the mother any questions about the Cobb County trial, any defense she offered in it, or any matters that appeared to touch on the attorney-client relationship between the mother and Bourassa's counsel. Other than a mere reference by another witness to the fact that the mother had been a co-defendant in the Cobb County case and later had her

18

charges dropped, there is no indication in the record that the mother's involvement in the Cobb County case or any defense she offered in it was ever brought before the jury or that any conflict between trial counsel's current representation of Bourassa and her former representation of the mother ever ripened at trial. This enumeration therefore fails.

3. Finally, Bourassa argues that he received ineffective assistance from his trial counsel. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 669 (2) (104 SCt 2052, 80 LEd2d 674) (1984).

> A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. Further, in evaluating deficient performance, the proper inquiry is focused on what the lawyer did or did not do, not what he thought or did not think, as hindsight has no place in an assessment of the performance of trial counsel.

*Pittman v. State*, 300 Ga. 894, 898 (2) (799 SE2d 215) (2017) (citations and punctuation omitted).

19

Because Bourassa's trial counsel represented him during his motion for new trial, he could not assert that he had received ineffective assistance of counsel at that time. Consequently, the trial court did not have an opportunity to consider this argument, and this appeal represents Bourassa's first opportunity to raise it. "Generally, when the appeal presents the first opportunity to raise an ineffective assistance claim, we remand the case to the trial court for an evidentiary hearing on the issue." *Wiley v. State*, 250 Ga. App. 731, 735 (3) (552 SE2d 906) (2001) (footnote omitted). However, where the record before us makes clear that certain of an appellant's claims of ineffectiveness fail as a matter of law, we need not remand those claims to the trial court for consideration. *See Lee v. State*, 199 Ga. App. 246, 247 (3) (404 SE2d 598) (1991) (remand on certain enumerations unnecessary where appellate court could resolve them without need to further develop the record).

The record and briefs before us contain information relevant to the consideration of some of Bourassa's claims of ineffectiveness. However, as set forth more fully below, for a number of claims asserted by Bourassa, proper consideration of such claims requires the development of a full record by the trial court specifically for the purpose of addressing his trial counsel's performance. *See Mallon v. State*, 253 Ga. App. 51, 54 (5) (557 SE2d 409) (2001) (remand required where claim of

20

ineffectiveness cannot be decided as a matter of law on the appellate record). Thus, although we determine that some of Bourassa's claims fail as a matter of law, we remand the case to the trial court for a hearing and determination on Bourassa's ineffective assistance claims noted below.

(a) Bourassa first asserts that his trial counsel was ineffective by failing to timely and fully disclose an actual conflict of interest relating to counsel's prior representation of Bourassa's mother. As discussed in Division 2, *supra*, the record before us contains significant information relating to the purported conflict of interest raised by Bourassa's trial counsel relative to her prior representation of Bourassa's mother in a different case. We ruled in Division 2 that trial counsel was not subject to an actual active conflict of interest given that she no longer represented Bourassa's mother and was never placed in a position where she was forced to question Bourassa's mother regarding privileged information or the prior case.

As we rejected Bourassa's argument that any conflict existed or developed during the course of the trial, we likewise reject his argument that such purported conflict somehow rendered his counsel's performance deficient. "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."

21

*Fogarty v. State*, 270 Ga. 609, 611 (513 SE2d 493) (1999). As this Court has previously discussed, "[a] mere possibility of conflict is insufficient to impugn a criminal conviction amply supported by competent evidence." *Capers v. State*, 220 Ga. App. 869, 874 (470 SE2d 887) (1996) (citation omitted). Because the significant record before us establishes that Bourassa's trial counsel was not laboring under an actual, active conflict of interest at trial, this enumeration fails as a matter of law.

(b) Bourassa next argues that his trial counsel was deficient because her purported conflict of interest kept her from effectively engaging in the plea negotiation process, namely that she was unable to refute certain claims about Bourassa's history of violence made by the State. As with the claims of error discussed above, this enumeration also fails.

The record reflects that Bourassa's supposed violent nature was not an issue in this case. Each of Bourassa's charges in this case related to drug trafficking and the operation of an ongoing drug business. Although the State sought enhanced punishments against him, those punishments stemmed from his status as a recidivist, not as a violent offender. Because of the nature of the charges brought against Bourassa and the particular sentencing enhancement sought by the State, we see no reason why any purported conflict of interest on the part of trial counsel arose, or

22

would have inhibited her full participation, in the course of plea negotiations with the State. Nothing about her representation of Bourassa's mother in a prior criminal matter appears relevant to those issues or the plea offers made by the State. Accordingly, this claim of ineffectiveness fails as a matter of law.

(c) Bourassa next argues that his trial counsel failed to provide him with an opportunity to listen to certain surreptitious recordings of phone calls that the State planned to introduce at trial. He argues that, had he been afforded an opportunity to listen to these recordings before trial, he would have accepted a plea offer from the State. Because the record before us does not reflect any assertion by trial counsel as to whether she actually reviewed these recordings with Bourassa before trial or what, if any, rationale trial counsel had for not reviewing these recordings with Bourassa, further development of the record is required in order to consider this claim of ineffectiveness. We therefore remand this case for consideration of this claim.

(d) Bourassa next argues that his trial counsel was ineffective in failing to file a demurrer to a RICO count in the indictment on the grounds of ambiguity under our Supreme Court's recent decision in *Kimbrough v. State*, 300 Ga. 878 (799 SE2d 229) (2017). This claim fails as a matter of law because counsel cannot be found to be

23

deficient for failing to file a demurrer on grounds not then established by our Supreme Court.

In this case, Bourassa filed a series of pre-trial motions to dismiss on June 20, 2013. A hearing was held on September 30, 2013, and those motions were denied on October 18, 2013. The Supreme Court's decision in *Kimbrough* was not handed down until April 2017.

"In making litigation decisions, there is no general duty on the part of defense counsel to anticipate changes in the law." *Redwine v. State*, 280 Ga. 58, 62 (3) (c) (623 SE2d 485) (2005) (citation and punctuation omitted). As our Supreme Court has further elaborated,

> when addressing a claim of ineffectiveness of counsel, the reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial. Thus, a new decision does not apply in a manner that would require counsel to argue beyond existing precedent and anticipate the substance of the opinion before it was issued.

*Perera v. State*, 295 Ga. 880, 886 (3) (d) (763 SE2d 687) (2014) (citation and punctuation omitted). Thus, in *Perera*, the Supreme Court held that counsel's failure to anticipate a change in the law through future decisions of the judiciary did not constitute deficient performance. *Id*. We likewise find in this case that Bourassa's

trial counsel was not deficient for failing to anticipate, and move to dismiss charges against Bourassa on the basis of, the principles outlined in *Kimbrough*. This claim of ineffectiveness therefore fails as a matter of law.

(e) Bourassa next argues that his trial counsel was ineffective due to her failure to present evidence of Bourassa's standing at the hearing on his motion to suppress. He argues that this deficiency prejudiced him because the trial court denied his motion to suppress on the basis of his lack of standing to challenge its admission. Here, as discussed in Division 1, *supra*, counsel did not call Bourassa to testify in the suppression hearing and instead relied solely on the State's theory in challenging admission of the evidence. As no record exists of trial counsel's strategic intent, if any, in not offering evidence of standing independent of the State's theory, further development of the record is required in order to consider this claim of ineffectiveness. We therefore remand this case for consideration of this claim.

(f) Bourassa next argues that his trial counsel was ineffective due to her failure to sequester his mother prior to calling her as a witness at trial. He claims he was prejudiced by this action due to the trial court's later instruction indicating that the jurors could consider the violation of the rule in its evaluation of the mother's credibility as a witness. This claim of ineffectiveness fails.

Prior to trial, both Bourassa and the State indicated to the court that they did not plan to call the mother as a witness. Bourassa subsequently invoked the rule of sequestration, without making any exception for the mother.

After the close of the State's case, Bourassa's trial counsel elected to call the mother to testify in regard to her relationship with the co-defendant, as that issue had been raised in the co-defendant's testimony. However, the mother had been present in court throughout the trial, in violation of the rule against sequestration. Trial counsel explained to the trial court that because the mother was not on the witness list, she had not seen a need to sequester her. However, trial counsel indicated that the testimony of Bourassa's co-defendant created a need for the mother's testimony. The trial court reprimanded trial counsel and gave a limiting instruction to the jury that a violation of the rule of sequestration could be considered by the jury in judging the credibility of the witness.

In this case, Bourassa cannot show that he was prejudiced by this action of his trial counsel. Even assuming that failure to advise the mother to leave the courtroom constituted deficient performance given the possibility that she might be called to testify, we fail to see how this action prejudiced Bourassa. In this case, the mother was called for the limited purpose of testifying about her relationship with the co-

26

defendant, as that issue had been raised in earlier testimony offered by the State. In light of the significant evidence of guilt presented by the State, including numerous wiretapped phone conversations, text messages, and physical evidence of a drug trafficking enterprise involving Bourassa, he fails to present any viable argument to this Court about how the outcome of the trial would have been different had the mother been properly sequestered, and had she testified to the same effect, but without the trial court instructing the jury that a violation of the rule had occurred. *See Hendricks v. State*, 290 Ga. 238, 243 (4) (e) (719 SE2d 466) (2011).

(g) Bourassa next argues that his trial counsel was ineffective in that she failed to adequately challenge the constitutionality of several recidivist sentencing provisions in OCGA § 17-10-7 under the Cruel and Unusual Punishment Clause in post-trial proceedings. However, the record reflects that, in his first amended motion for new trial, which was filed by trial counsel, Bourassa claimed that his sentence violated the Eighth Amendment. This prompted a ruling from the trial court that the sentencing statutes at issue did not violate Bourassa's Eighth Amendment rights.

In his brief, Bourassa asserts that his trial counsel's purported conflict of interest barred her from effectively addressing the constitutionality of these statutes because she could not refute assertions by the State that Bourassa had a history of

violence. However, the sentencing statutes cited in Bourassa's brief, OCGA § 17-10-7 (a) and (c), dealing with repeat offenders, do not deal with prior violent offenses per se. Subsection (a) provides, in relevant part, that

> any person who, after having been convicted of a felony offense . . . commits a felony punishable by confinement in a penal institution shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.

Likewise, subsection (c) provides that

> any person who, after having been convicted . . . for three felonies . . . commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

None of the offenses for which Bourassa was convicted in this case constitute, or were based on, acts of violence, and neither statute set forth above provides for any enhanced punishment based on the nature of the crimes committed, violent or otherwise. Only the fact of prior convictions matters under OCGA §§ 17-10-7 (a) and (c).

28

Moreover, at Bourassa's sentencing hearing, trial counsel explicitly argued that the sentences sought by the State were excessive and disproportionate to those received by other members of the conspiracy that involved Bourassa. And critically, trial counsel's own words at that hearing clarify that, as the State has continually asserted in these proceedings, considerations of Bourassa's supposedly violent nature played no part in the case or in the sentencing enhancement sought by the State:

> There is no violence. There was no violence alleged in this case. My client was never even alleged to have committed any acts of violence towards anybody in this case. There is no victim here. There is no fear of him going out and committing future crimes toward a victim. This is about drug dealing, that's what this is about.

As the State correctly noted that the sentencing enhancement that it sought was based on Bourassa's status as a recidivist, , and as trial counsel explicitly recognized that accusations of violence had no part in Bourassa's case or the enhancements sought by the State, we fail to see how trial counsel was limited by any conflict of interest in raising an Eighth Amendment challenge to the application of these statutes in handing down Bourassa's sentence. This enumeration fails.

(h) Lastly, Bourassa raises a blanket claim that his trial counsel failed to properly investigate his case and call certain witnesses that, had they been called,

29

would have changed the outcome of his case. Because the record before us does not appear to reflect any assertions by trial counsel regarding her efforts to investigate the case, prepare a defense, and determine what evidence to present other than with regard to the issues addressed above, further development of the record is required in order to consider this claim of ineffectiveness. We therefore remand this case for consideration of this claim.

*Judgment affirmed, case remanded. McFadden, P. J., and Branch, J., concur*.