306 Ga. 329
FINAL COPY

S18G1136.  BOURASSA v. THE STATE.

WARREN, Justice.

In this criminal case, we granted a writ of certiorari to review the Court of Appeals' ruling that the trial court did not err in denying Jeffrey Alan Bourassa's motion to suppress certain intercepted phone communications.  Bourassa was convicted of possessing more than one ounce of marijuana, conspiracy to commit that crime, and violating the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO") by using a telephone to arrange for the purchase of more than one ounce of marijuana from co-indictee German William Beltran.  The evidence supporting these convictions was obtained during a police investigation of Beltran and others that included extensive surveillance and investigation warrants that authorized the interception of electronic and oral communications for several phone numbers, including Beltran's.  Neither Bourassa's phone number nor any phone number allegedly

used by him was listed as a target in the investigation warrants, and Bourassa's phone number was not known to be associated with any of the phone numbers listed in the investigation warrants as targets. However, the following evidence uncovered in the course of the investigation led police to Bourassa.

In intercepted phone conversations and text messages between Beltran and a man who identified himself as "J" or "JB"[1] that were surveilled from March 4 to 9, 2013, the two men discussed the exchange of large quantities of marijuana and pills, and ultimately agreed to meet at a residence associated with Beltran on March 9, 2013. When those communications ended, Bourassa and his girlfriend arrived at the residence previously identified in the intercepted communications. Shortly after they left the residence, a law enforcement officer stopped their vehicle (which matched a description of the vehicle police surveillance had spotted arriving at

---

[1] Officers testified at trial that they confirmed JB's identity as Bourassa through a series of phone calls and texts that led them to the Facebook page of Bourassa's girlfriend, which in turn led them to a photograph officers were able to use to visually identify Bourassa.

and leaving the residence), obtained consent to search, found 448.5 grams of marijuana and $4,800 cash inside, and arrested Bourassa and his girlfriend.

Bourassa moved to suppress the communications intercepted in March 2013, arguing (among other things) that the investigation warrants that resulted in the interception of his phone conversations and text messages violated the laws of Georgia and the Fourth Amendment to the United States Constitution.[2] Bourassa did not testify at the hearing on the motion to suppress or stipulate that he was a party to those conversations and messages, and the State argued that he failed to prove standing. At the suppression hearing, the investigation warrants — including the applications and supporting affidavits — were admitted, and the affiant and sole witness, Sgt. Randy Folsom of the Douglas County

---

[2] In his motion, Bourassa also asserted that the warrants violated the Georgia Constitution of 1983, Art. I, Sec. I, Par. XIII. But "we generally interpret [that provision] consistent with the Fourth Amendment." *Olevik v. State*, 302 Ga. 228, 234 (806 SE2d 505) (2017). And, like the defendant in *Olevik*, Bourassa "offers no reason that we should interpret Paragraph XIII differently in this context." Id.

Sheriff's Office, confirmed that neither Bourassa nor any phone number associated with him was specified as a target in the warrants. On cross-examination, defense counsel then questioned Sgt. Folsom about the intercepted phone calls:

> Q. Was [Bourassa] ever part of the call or party on the call?
>
> A. He was identified – or his phone number was identified as one of the phone numbers [that] was calling us, yes.

Specifically, Sgt. Folsom testified that police had determined through surveillance of Beltran's phone calls that some of those calls were between Beltran and someone using a phone number that was not in Bourassa's name, but was associated with his girlfriend's Facebook account. Surveillance recordings revealed, however, that the phone number was being used by someone with a male voice. Sgt. Folsom's cross-examination continued as follows:

> Q. Okay. So when was the first time that Mr. Bourassa was linked to the actual phone, not just that number, but the actual phone?
>
> A. I believe it was – I have to go back and look at the phone calls, but I believe it's when he called and set up a drug deal and was surveilled, we got pictures of him.

4

Q. Okay. And so it's your belief and testimony that he was a party to some of the phone calls that were tapped, that were listened to on this tap?

A. Yeah, he was part of the conversations that we received.

Q. Okay. And how was it that you were able to identify his voice as a person on the other end? How did you make that link?

A. Basically, we didn't. I mean, it was just a phone number that he called – a male voice called and set up a drug transaction, he was surveilled to a location. We have photographs of him showing up at the exact same time and we followed him back. You know, all evidence indicated that it was him.

On redirect examination, Sgt. Folsom testified that he had never met or interviewed Bourassa; that he had no reason to know what Bourassa's voice sounded like; that he believed it was Bourassa's voice on the recorded calls "[b]ased on the evidence we developed"; that "it's basically a guesstimate that that's [Bourassa's] voice on the [calls]"; and that Bourassa never admitted that it was his voice.

The trial court denied Bourassa's motion to suppress on the basis that Bourassa did not have standing, reasoning that

5

[t]he evidence developed during the hearing came solely from the [S]tate. The defendants[3] did not offer any evidence. Specifically, the defendants did not offer any evidence that they were parties to any of the conversations intercepted pursuant to any of these orders. The defendants also did not stipulate or concede that they are parties to any of those conversations. As to any intercepted conversation to which the defendants were not parties, they have no standing. . . . It is also clear that the defendants bear the burden to establish their standing. They have not offered any evidence of their standing, nor can they rely on the State's position, contention or theory to establish standing.

After Bourassa was tried and convicted, he moved for a new trial, raising as error the trial court's failure to suppress the intercepted telecommunications. In its order denying the motion for new trial, the trial court ruled that, because there was no evidence, stipulation, or concession at the hearing that either defendant was a party to any intercepted conversation, the court "remain[ed] satisfied that Bourassa did not show that he had standing to object to the wiretap evidence."

---

[3] Bourassa's girlfriend was a co-indictee who also challenged the admissibility of the communications intercepted in March 2013 pursuant to an investigation warrant. She entered a negotiated guilty plea four months before trial.

The Court of Appeals affirmed Bourassa's convictions, although it remanded the case for further consideration of certain ineffective assistance of counsel claims. *Bourassa v. State*, 345 Ga. App. 463 (811 SE2d 113) (2018). As for the trial court's denial of Bourassa's motion to suppress, the Court of Appeals determined that the trial court did not err and agreed that the testimony elicited at the suppression hearing was

> insufficient to establish Bourassa's standing to suppress the recordings. The questions asked by Bourassa's counsel on cross-examination were not an offer of evidence, nor did they provide proof that it was in fact Bourassa's voice that could be heard. Those questions, and the responses of [Sgt. Folsom], merely confirmed the State's theory that it was Bourassa's voice that could be heard on the recorded calls.

Id. at 466. The Court of Appeals then adopted the reasoning of *United States v. Bell*, 218 Fed. Appx. 885, 895 (11th Cir. 2007), and *United States v. Chavez-Maciel*, 2012 U.S. Dist. LEXIS 183038 at *53-54 (N.D. Ga. Dec. 7, 2012), to hold that a defendant has the burden to establish his standing to challenge the State's use of intercepted communications under the Fourth Amendment by

7

stipulating as to standing or bringing forward evidence establishing standing that is independent of the government's evidence. *Bourassa*, 345 Ga. App. at 466-467. Specifically, it held that

> Bourassa did not stipulate or admit that his voice could be heard on the calls at issue. Although the State's witness believed that Bourassa's voice could be heard on the recordings, this was merely a conclusion based on other circumstantial evidence. Thus, because no evidence presented by the State or adduced through cross-examination established that Bourassa was a party to the calls, the trial court was authorized to find that Bourassa did not satisfy his burden of establishing standing.

Id. at 467.

We granted Bourassa's petition for certiorari and posed a single question: "Did the Court of Appeals err in affirming the trial court's ruling that Bourassa lacks standing to seek to suppress the intercepted phone conversations?" Because the Court of Appeals evaluated standing under the wrong legal standard, we vacate the judgment of the Court of Appeals and remand the case to that court with further direction to remand the case to the trial court for reconsideration in accordance with this opinion.

Bourassa contends that the Court of Appeals erred by

8

affirming the trial court's ruling that he lacked standing to suppress the intercepted phone conversations. To support his argument that he established standing, Bourassa points to testimony (which he characterizes as "direct evidence") his trial counsel elicited during cross-examination of Sgt. Folsom in which Folsom agreed that it was his "belief and testimony" that Bourassa "was a party to some of the phone calls that were tapped" and that Bourassa "was part of the conversations that we received."

The standard for obtaining an investigation warrant in Georgia closely mirrors the federal standard. Indeed, since 2002, OCGA § 16-11-64 (c) has incorporated into Georgia law the federal-law standard for obtaining an investigation warrant. See id. (explaining that a "court may issue an investigation warrant permitting the use of a device for the surveillance of a person or place to the extent the same is consistent with and subject to the terms, conditions, and procedures provided for by 18 U.S.C. Chapter 119"). See also *Luangkhot v. State*, 292 Ga. 423, 425 (736 SE2d 397) (2013) (noting that the 2002 amendments to OCGA § 16-11-64 were

9

"intended to streamline Georgia's rules in this area and harmonize them with federal standards"). Under federal law, only an "aggrieved person in any trial, hearing, or proceeding in or before any court . . . of . . . a State . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to [18 USC Chapter 119], or evidence derived therefrom." 18 USC § 2518 (10) (a). In this context, "'aggrieved person' means a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 USC § 2510 (11). We apply a Fourth Amendment analysis, as developed by federal and Georgia case law, to determine whether a defendant has standing to challenge the interception of electronic communications. *Hampton v. State*, 295 Ga. 665, 668-669 (763 SE2d 467) (2014).

Here, Bourassa contends that the following testimony elicited during Sgt. Folsom's cross-examination at the motion to suppress hearing established Bourassa's standing:

Q. Okay. And so it's your belief and testimony that he

10

was a party to some of the phone calls that were tapped, that were listened to on this tap?

A. Yeah, he was part of the conversations that we received.

The Court of Appeals rejected that argument, and in so doing committed two fundamental errors in its standing analysis.

First, in holding that Bourassa had not established standing in this case, the Court of Appeals endorsed the notion that a movant must offer evidence "independent of the government's evidence" to prove standing.[4] *Bourassa*, 345 Ga. App. at 466 (citing *United States v. Bell*, 218 Fed. Appx. at 895). But the Court of Appeals misapplied the two federal cases, *United States v. Bell* and *United States v. Chavez-Maciel*, on which it relied to announce that rule. Indeed, in *Bell*, the Eleventh Circuit did not hold that a defendant must bring forth his own, separate evidence to establish standing; rather, it held that a defendant did not establish standing where the government's

_____

[4] Notably, the Court of Appeals appears to have contradicted its own analysis in this regard by later acknowledging that standing could have been established in this case through "evidence presented by the State or adduced through cross-examination [of State witnesses]." *Bourassa*, 345 Ga. App. at 467.

11

evidence showed that the defendant leased the apartment that was searched by police, but the defendant consistently denied having any leasehold interest in the property, such that the defendant challenged the validity of the very evidence on which he otherwise may have been able to rely to prove standing. 218 Fed. Appx. at 895. See also *United States v. Maxwell*, 778 F3d 719, 732-733 (8th Cir. 2015) (holding that it was not clearly erroneous to find that the defendant did not prove standing when he relied entirely on a statement in a warrant affidavit that he had discredited by contending it was recklessly and materially false). And in *Chavez-Maciel*, a federal district court held only that the defendant could not establish standing by pointing to evidence that the government's wiretap targeted a person named "Picho" and by claiming that "Picho" was his nickname when he presented no "evidence establishing that he [was] 'Picho,' he was an actual target of the wiretaps, or he was intercepted on the wiretaps." 2012 U.S. Dist. LEXIS 183038 at *53. Contrary to the Court of Appeals' characterization of that holding, the federal district court in *Chavez-*

12

*Maciel* acknowledged that the defendant in that case *could have* established standing by pointing to government evidence, as opposed to mere speculation. See id. at \*54 ("Chavez-Maciel has not pointed [to] any evidence of his own *or of the Government* that conclusively establishes that he is in fact 'Picho.'" (emphasis supplied)).

Moreover, the Court of Appeals' analysis contravenes both general trial procedure and the specific procedure that has been applied to evaluate standing in suppression hearings. In particular, the Court of Appeals was mistaken in its conclusion that a party seeking to establish standing cannot satisfy its burden by pointing to evidence offered by the other party.[5] It is generally understood that "even if the burden of proof is on one party, it may happen that the burden is actually met in a particular case by evidence given by

---

[5] Because the trial court completely discounted the possibility that Sgt. Folsom's testimony on cross-examination could constitute evidence on which Bourassa could rely to establish standing, the trial court (like the Court of Appeals) was also misguided when it concluded that Bourassa did not have standing because he had not offered his own evidence at the motion to suppress hearing.

13

the other party." 6 Wayne R. LaFave, Search & Seizure § 11.2 (b) (5th ed. Oct. 2018 update). Indeed, there is no categorical bar that precludes a party seeking standing from pointing to evidence (as opposed to mere arguments) offered by the other party; to the contrary, the general rule with respect to standing in wiretap cases is "that the defendant may not rely on positions the government has taken in the case but must present evidence of his standing, *or* at least *point to specific evidence in the record which the government presented that established his standing*." Id. (quoting *United States v. Zermeno*, 66 F3d 1058, 1062 (9th Cir. 1995) (punctuation omitted; emphasis supplied)). See also, e.g., *United States v. Gates*, 745 FSupp.2d 936, 948 n.4 (N.D. Cal. 2010) ("[A] defendant may establish standing by pointing to all evidence in the record, including the Government's evidence."); *People v. Gonzalez*, 502 NE2d 1001, 1002 (N.Y. 1986) ("There is no requirement that a defendant testify in order to sustain his burden of proving standing . . . , and evidence elicited during the People's direct case may be cited in support of a defendant's standing claim.").

Applying that general rule here, the Court of Appeals was correct to the extent it suggested that Bourassa could not rely on a mere *position, contention, or theory* of the State. See *Bourassa*, 345 Ga. App. at 466. But it erred insofar as it concluded that Bourassa could not rely on the State's *evidence* to prove standing. See, e.g., *Zermeno*, 66 F3d at 1062; *Gates*, 745 FSupp.2d at 948 n.4; *Gonzalez*, 502 NE2d at 1002. Cf. *Bourassa*, 345 Ga. App. at 466-467. Contrary to the Court of Appeals' holding, therefore, Bourassa should have been permitted to rely on Sgt. Folsom's testimony in an attempt to establish standing.

Second, the Court of Appeals rejected the argument that testimony elicited during Sgt. Folsom's cross-examination was "evidence" and erroneously characterized his testimony as "merely confirm[ing] the State's theory that it was Bourassa's voice that could be heard on the recorded calls."[6] *Bourassa*, 345 Ga. App. at

---

[6] We note that the trial court made a similar error when it concluded that "[t]he evidence at the [suppression] hearing did not include any evidence that [Bourassa] was a party to any of the conversations that were intercepted pursuant to any of the orders," thereby completely discounting the evidentiary value of Sgt. Folsom's testimony on cross-examination.

466. More specifically, the Court of Appeals held that Sgt. Folsom's testimony — which, among other things, evinced his "belief and testimony" that Bourassa was a party to some of the intercepted calls — was based only on "circumstantial evidence" and thus did not constitute "evidence presented by the State or adduced through cross-examination" that could "establish[ ] that Bourassa was a party to the calls." Id. at 467. The Court of Appeals, however, incorrectly assumed that Sgt. Folsom's testimony did not contain any direct evidence when at least some of his testimony could have reasonably been construed as providing direct evidence that Bourassa was a party to intercepted phone conversations — for example, Sgt. Folsom's response of: "Yeah, he was part of the conversations that we received." Id. at 465.

But even if Sgt. Folsom's responses on cross-examination were not interpreted as providing direct evidence, Bourassa was not required to rely only on direct evidence to establish standing; he could have also relied on circumstantial evidence.

In other contexts, we have held that circumstantial evidence

that is admissible under our Evidence Code can be as probative as direct evidence and can be sufficient to support a conviction. See OCGA § 24-14-6; *Carter v. State*, 305 Ga. 863, 867 (828 SE2d 317) (2019) (holding that the circumstantial evidence of the crimes was "strong" and "'(t)he fact that the evidence of guilt was circumstantial does not render it insufficient'" (citation omitted)); *Outz v. State*, 344 Ga. App. 616, 617 (810 SE2d 678) (2018) (circumstantial evidence may be "'as probative as direct evidence'" (citation omitted)). Given that circumstantial evidence can be sufficient to support a jury's ultimate determination of guilt, we can identify no reason why circumstantial evidence could not be sufficient to establish standing at a pre-trial, motion-to-suppress stage. Cf. *United States v. Davis*, 799 F2d 1490, 1492 (11th Cir. 1986) (proof of consent to the interception of a wire communication "need not consist of testimonial evidence. The burden [of proof] also can be met by circumstantial evidence . . . ."); *United States v. Lowe*, 2009 WL 1578293 at *6 (W.D. Wis., June 3, 2009) ("[A]t suppression hearings, . . . a fact-finder may employ common sense in making reasonable

17

inferences from circumstantial evidence" (citations omitted)). We therefore hold that a movant in a motion to suppress hearing may rely on circumstantial evidence to meet his burden of proof to establish standing.

In sum, the Court of Appeals erroneously concluded that Bourassa had to present his own evidence to prove standing and that circumstantial evidence could not suffice to meet that burden. As a result, the Court of Appeals did not properly evaluate Bourassa's arguments about the evidentiary value of Sgt. Folsom's testimony. Moreover, because the trial court did not make findings or credibility determinations about Sgt. Folsom's testimony, the Court of Appeals had nothing to review on appeal in that regard. Accordingly, we vacate the judgment of the Court of Appeals and remand the case to that court with direction to remand the case to the trial court for appropriate consideration of the evidence related to standing. See *State v. Abbott*, 303 Ga. 297, 304-305 (812 SE2d 225) (2018); *Welbon v. State*, 301 Ga. 106, 110-111 (799 SE2d 793) (2017); *Williams v. State*, 301 Ga. 60, 61-62 (799 SE2d 779) (2017).

18

*Judgment vacated and case remanded with direction.  All the Justices concur, except Bethel, J., who is disqualified.*

Decided June 28, 2019.

Certiorari to the Court of Appeals of Georgia --- 345 Ga. App. 463.

*Stephen M. Reba*, for appellant.

*Ryan R. Leonard, District Attorney, Aimee F. Sobhani, Assistant District Attorney*, for appellee.